# PREMIUM OIL CO. v. CEDAR CITY.

No. 7044.   Decided November 29, 1947.   (187 P. 2d 199.)

See 26 C. J. S., Dedication, sec. 12. Right of abutting owner to complain of misuse of public park or violation of right or easements appurtenant thereto, see note, 60 A. L. R. 770. See, also, 16 Am. Jur., 401.

*Callister, Callister & Lewis,* of Salt Lake City, for appellant.

*Orville Isom,* of Cedar City, for respondent.

LATIMER, Justice.

Appellant, plaintiff in the trial court, commenced an action to require respondent city to remove a cement curb which is obstructing the use of a certain strip of property

located in Cedar City, Utah. The strip involved is contiguous to land owned by appellant and the appellant alleges it to be a public street. The city, in defense of the action, denied that there had been a dedication of the property as a public street and affirmatively alleged several separate and additional defenses. For the purpose of disposing of this appeal it is only necessary to discuss one question, namely, assuming a completed dedication of the street, are appellant and its predecessors in interest estopped to deny the vacation or abandonment of the dedication? If so, the other assignments of error need not be considered.

The property which is involved in the action is located between 1st and 2nd North Streets and Main and 1st East Street, Cedar City, Utah, and was part of the land conveyed by the U. S. Government to the Mayor of Cedar City in 1872, under the act of Congress of March 2, 1867, 43 U. S. C. A. § 718 et seq., commonly known as the Townsite Act. In 1875 the city caused a plat to be filed with the county recorder showing the property subdivided into blocks, lots and streets. This plat identified all of the property bounded by 1st and 2nd North Streets and Main and 1st East Streets as "Public Grounds."

On March 30, 1881, the mayor conveyed a rectangular piece of the land marked "Public Grounds" to the trustees of Cedar City School District. This piece of property was located in about the center of the block, was eight rods north and south, by twenty four rods east and west, and is the property now owned by respondent company. On the 2nd day of May, 1881, the trustees conveyed this same property to one George Wood, the father of Ada W. Webster, from whom appellants purchased the property. Without detailing the various conveyances, the abstract of title shows that Ada W. Webster obtained title to the full parcel of property by March 19, 1910. She was the record owner of the property from this time until she conveyed to appellant some time during the years 1944 or 1945.

After the sale of the parcel of property to the trustees of the School District and in the year 1902, a new plat of

the city was filed for record. A copy of this plat appears here:

(Copy of tracing made from Official Map Cedar City, filed in the office of the County Recorder, Iron County, Utah.)

Both parties called witnesses to testify to the use or lack of use by the public of the property as a street or roadway. The evidence of use was far from convincing, but the trial court did find a very limited amount of travel across the strip by stockmen and others on horseback, some with wagons and others driving livestock. However, due to the fact that during the early history of the city the whole park area was unenclosed and unoccupied, the direction of travel uncertain, and some travel over all portions of the public ground, the court found contrary to appellant's contention that the north six-rod strip was used as a street.

The evidence established and the court found the following: That approximately 25 years before the trial or 23 years before appellant acquired the property the respondent caused a fence to be erected along the west side of the public park. This fence extended along the west boundary of the claimed right of way to the southwest corner of the property now owned by the appellant. If there had been any amount of traffic over the disputed strip as contended for by appellant, the erection of the fence blocked further use of the property for such purpose. About the same time the fence was erected, the city caused the property to be cleared of brush, improved it, and since that time it has used it as a part of the City Park. Approximately 25 years prior to the trial of the action the city caused a pioneer log cabin to be placed on the strip of property. This community project was partially at the request of Mrs. Wood, who was then the owner of appellant's property. During the year 1939, a Federal Aid project was started and a municipal swimming pool was constructed, part of which was built on the disputed roadway. Some time between the years 1932 and 1942, the exact date not being established, the city constructed the curbing along the east side of main street and along the west end of the strip in question. Appellant and its predecessors in interest have never used the west portion of the strip as a means of ingress and egress to their property.

It is undisputed by the parties that if the plat of 1902 was a dedication of the strip as a roadway, respondent city did not vacate the dedication by an appropriate ordinance. Assuming without deciding that Cedar City dedicated the strip of land as a street, the effective date of the dedication was April 30, 1902. From that time until approximately 1922 any roadway across the property remained in an unimproved and undeveloped state. No attempt was made by the city or by the public to improve the property so as to indicate the presence of a street. Very little traffic went over or along the strip, and that which did took a meandering course to the southeast. These facts are only important in this decision to indicate that when the city later constructed improvements over the strip it acted in good faith. Aside from the records in the county recorder's office, there was nothing to charge the city with notice that anyone might claim the right to use the strip for roadway purposes. The strip itself was not part of the regular plan of the city road system. It was a mid-block strip extending through the one block only and was not extended east or west in the contiguous blocks. It was as indicated by the plats, a part of the city property that had been reserved for public grounds.

In connection with the dedication of roads, there are certain rights granted to the public and other rights granted for contiguous property owners. In this particular instance we have only two contiguous property owners to be concerned with, if we limit the time involved to the last 35 years. While we cannot disregard the public's right to use dedicated property, in this action it is not quite so important, as the strip is still being used by the public. Only the use has been changed. In other actions, this change might be important; in this one, however, no evidence was produced that any individual or company aside from appellant has been discommoded, and no person has established a right to complain.

While the city may have been the dedicator, the title to the property did not pass from the city. It still owns the

fee, so the only right the public could have acquired would be the right to an easement across the strip for travelling purposes and the only additional right the contiguous property owners might acquire would be the right of ingress and egress to their property.

As far as individuals are concerned, their acts and conduct can be such as to estop them from enforcing their rights. McQuillin, Municipal Corporation, Revised 2nd Ed., Vol. 4, page 815, states the general rule:

"The municipality may be estopped to assert a dedication by acts and conduct which have been relied on by others to their prejudice. Likewise, a private individual may be estopped in the same way as where he stands by and permits others to expend money in building on land claimed to have been dedicated. * * *"

If we apply this general rule to the peculiar facts of this case we find that approximately 25 years prior to the trial of the action, the city erected a fence which prevented both the public and the adjacent property owners from using the right of way. Mrs. Wood, the then owner of the appellant's property failed to make any protest to the fencing of the property. She made no claim that her right of ingress or egress was effected and apparently made no contention that the city was interfering with any right she might have had. The construction of the fence dates back some 25 years, and its erection definitely interfered with and was hostile to the use of the strip for a street. Some five years later the city, partially through the efforts and solicitation of Mrs. Wood, moved a pioneer cabin onto the strip. She not only did not object, she was one of the instigators of the plan. Some ten to twelve years ago, the city constructed a swimming pool at a cost of approximately $36,000, and part of this construction was across part of the strip. Mrs. Wood did make some objection that the pool would be too close to her property and would be a nuisance to her, but made no contention that it was being constructed on a roadway, or that it was interfering with

any right she might have had. Some time between 1932 and 1940, a curb and gutter was constructed on the west side of the street without protest from her. It thus appears that at least for 25 years the owner of the continguous property never used the land in dispute, sat by and watched the city affix the strip to its public park, observed it make extensive and valuable improvements, and joined with the public in requesting part of the improvements, without ever lodging a protest as to the improper use of the land.

The city has at all times owned the property, so that the only rights Mrs. Wood could have claimed as a contiguous property owner was the right to an easement across the strip. She not only stood by and permitted the city to expend large sums of money in improving the property for the benefit of the public, she went even further. She actively encouraged the city to make some of the improvements. The manner in which the city used the strip was openly hostile to the public use as a street and should have been notice to all that any dedication, if previously intended, had been abandoned. Under the facts of this case we hold Mrs. Wood would be estopped to claim an improper abandonment or vacation, and if the appellant's rights are no greater than hers, then it too is estopped.

Appellant, by its purchase from Mrs. Wood, could acquire only the rights that ran with the land, unless the city, by some act prior to the purchase, had misled appellant to its damage. While the evidence shows a plat in appellant's abstract which indicated the presence of Park Street, this could not have caused appellant to purchase the property relying on a "paper" street. The record shows that for eight years prior to the trial, appellant had leased and operated the property immediately to the north and contiguous to the property purchased by it. The leased property is only eight rods north of the strip in dispute. The president of appellant corporation had inspected both properties and was aware of the improvements placed on the strip. Their nature was such that it would be apparent to a reasonable purchaser that if there ever had been a

dedication, the city many years before had changed the nature of the use and had either vacated or abandoned the dedication. From the time of filing the last plat in 1902, until 1917 or just prior to the time the fence was erected, the city could vacate the dedication without having passed an ordinance. See Sec. 206x8, Comp. Laws 1907, as amended by Laws of Utah, 1915, c. 100, § 1. Appellant is not in a position to claim it was misled because the plat had not been changed or no ordinance passed vacating the dedication. It had actual knowledge before it purchased the contiguous property that the strip was not usable as a street without destroying costly and permanent improvements being used by the public.

This case is peculiar in the fact that the city officials representing the public were responsible for any dedication of the land for public use. Its rights are comparable to those of a private dedicator. If a dedication were made, unless accepted by public use, the city, as dedicator, could vacate or revoke the dedication, subject to rights acquired by reliance on the dedication. It might be that the limited use indicated in the record would be sufficient to show an acceptance by the public. However, it is not necessary for us to determine this question for the reason that under the facts of the case the estoppel is also effective against the public.

In many cases where cities attempt to open dedicated streets for the benefit of the public, the courts have estopped the city from enforcing a dedication because the city authorities and the public itself has taken no action over a period of years, to prevent the erection of valuable improvements. If the right of the public can be lost in such cases, it would appear that the right could be lost in this case. In the case of *Wall* v. *Salt Lake City*, 50 Utah 593, 168 P. 766, 770, this court refused to allow Salt Lake City to open 8th South Street to the full dedicated width because of the actions of its agents in permitting the abutting owner to expend money and effort on improvements. The court in that case referred to Para-

graph 1194 of Dillon's Municipal Corporations, which reads as follows:

"* * * But such a corporation does not own and cannot alien public streets or places, and no mere laches on its part or on that of its officers can defeat the right of the public thereto; yet there may grow up in consequence, private rights of more persuasive force in the particular case than those of the public. It will perhaps be found, that cases sometimes arise of such a character that justice requires that an equitable estoppel shall be asserted even against the public, but if so, such cases will form a law unto themselves, and do not fall within the legal operation of limitation enactments. The author cannot assent to the doctrine that, as respects public rights, municipal corporations are implied within ordinary limitation statutes. It is unsafe to recognize such a principle. But there is no danger in recognizing the principle of an estoppel in pais as applicable to exceptional cases, since this leaves the courts to decide the question, not by the mere lapse of time, but upon all the circumstances of the case to hold the public estopped or not, as right and justice may require."

The Supreme Court of Illinois in the case of *Village of Itasca et al.* v. *Schroeder,* 182 Ill. 192, 55 N. E. 50, 58, announced the rule in that jurisdiction to be the following:

" 'It is true that we have held that where the public have long withheld the assertion of control over streets, and private parties have been, by the acts of those representing the public, induced to believe the streets abandoned by the public, and on the faith of that belief, and with the acquiescence of those representing the public, they have placed themselves, by making structures or improvements in the streets, in a situation where they must suffer great pecuniary loss if those representing the public be allowed afterwards to allege that the street was not abandoned, the doctrine of equitable estoppel may be applied.' " (Citing cases)

In this case the public through its municipal officers, changed the public use of the land and, over a long period of time, expended large sums of money to adapt the property to the new use. The public interest in the land is still present even though it may be for a different reason. If any citizen or citizens were to attempt to require the city to restore the strip to a condition where it could be used as a street, he or they would be estopped because of long continued acquiescence in the present use.

We have not overlooked appellant's contention that they only need the westerly end of the strip. The answer to this is that the city, having converted all of the property to park purposes, should not be disturbed in its present use. If the appellant is estopped to deny an abandonment or vacation of the dedication, this would apply equally to the whole strip. No question of partial use or abandonment is involved. Either the city has acquired the right to the use of the whole strip, or the strip is still subject to being opened up as a street.

The judgment is affirmed, with costs.

McDONOUGH, C. J., and PRATT, WADE, and WOLFE, JJ., concur.