2006 UT App 473

**WASATCH COUNTY, a body politic of the State of Utah, Plaintiff, Appellant, and Cross-appellee,**

v.

**E. Ray OKELBERRY, Brian Okelberry, Eric Okelberry, Utah Division of Wildlife Resources, West Daniels Land Association, and John Does 1–25, Defendants, Appellees, and Cross-appellants.**

No. 20050389–CA.

Court of Appeals of Utah.

Nov. 30, 2006.

Thomas L. Low and Scott H. Sweat, Heber City, for Appellant and Cross-appellee.

Ryan D. Tenney, Howard Lewis & Petersen, Provo, for Appellees and Cross-appellants.

Before BENCH, P.J., McHUGH and ORME, JJ.

## OPINION

McHUGH, Judge:

¶ 1 Wasatch County (Wasatch) appeals the trial court's ruling that principles of estoppel prevent it from exercising control over roads, located on land owned by West Daniels Land Association (the Association) and E. Ray Okelberry, Brian Okelberry, and Eric Okelberry (collectively, the Okelberrys),[1] that were

---

1. The Association owns property immediately adjacent to property owned by the Okelberrys. As members and shareholders in the Association, the Okelberrys used the Association's land in conjunction with their own for grazing livestock. The Association was initially included in the suit as a defendant. However, for reasons not clear from the record, it withdrew from the litigation. After the Association failed to appoint successor counsel, Wasatch sought default judgment against the Association. The Okelberrys opposed the motion and argued that as members of the Association they had the right to represent its interests at trial. The trial court did not directly enter a ruling on Wasatch's default judgment motion. Later, the court noted that default judgment had been entered against the Association in its Findings of Fact and Conclusions of Law. However, the trial court had allowed the Okelberrys to submit evidence with respect to the roads located on both the Okelberrys' and the Association's properties at trial. Additionally, the trial court adjudicated the status of the roads located on the Association's property, implicitly rejecting Wasatch's argument that the Okelberrys lacked standing to represent the Association's interests. See Zions First Nat. Bank v. C'Est Bon Venture, 613 P.2d 515, 517 (Utah 1980) (recog-

adjudicated abandoned and dedicated to the public. The Okelberrys cross-appeal the trial court's determination that the roads were dedicated to the public under Utah Code section 72–5–104(1). *See* Utah Code Ann. § 72–5–104(1) (2001). We affirm in part and reverse and remand in part.

## BACKGROUND

¶ 2 In 1957, the Okelberrys[2] purchased a tract of rural, undeveloped property in Wasatch County. The property is criss-crossed by a series of unimproved dirt roads including the four roads at issue in this appeal: the Thorton Hollow Road, Ridge Line Road, Parker Canyon Road, and Circle Springs Road (the Four Roads).[3] The Four Roads begin and end at points outside the Okelberrys' property or are connected to roads that begin and end outside the property. At the time the property was purchased, it was bordered on the east and south by fences, separating the Okelberrys' property from United States Forest Service property. There were also multiple wire gates along the Four Roads such that persons traveling on the Four Roads generally had to open the gates before proceeding within the boundaries of the Okelberrys' property.

¶ 3 Sometime in 1989, the Okelberrys started barring public use of the Four Roads by constantly locking the gates and posting no trespassing signs. In the mid–1990s, the Okelberrys placed their property into a Cooperative Wildlife Management Unit (CWMU) that allowed them to realize a profit from exclusive hunting activities on the property. In 2001, twelve years after the Okelberrys began permanently locking the gates, Wasatch initiated suit to have the Four Roads declared public highways under Utah Code section 72–5–104. *See* Utah Code Ann. § 72–5–104.[4] Under that provision, "[a] highway is dedicated and abandoned to the use of the public when it has been continuously used as a public thoroughfare for a period of ten years." *Id.* § 72–5–104(1).

¶ 4 After a three-day bench trial, the court entered findings of fact and conclusions of law. First, the court "specifically found that there was not public use of the [Four Roads] in the 1940s or before and also ... no evidence of vehicular use prior to the 1950s." The court also specifically found that Wasatch had never performed any maintenance on the Four Roads.

¶ 5 Turning to the evidence and testimony presented at trial, the court noted that Wasatch had presented witnesses, members of the general public, who testified that for different periods of time between 1957 and 1989 they freely used the Four Roads. The court noted that the Okelberrys' witnesses alternatively testified that beginning in the 1960s, the gates on the Four Roads were generally kept closed and "periodically locked for several days at a time and that signs were also posted on the gates and property which stated 'No Trespassing—Private Property.'" Additionally, employees of

---

nizing that trial courts implicitly deny motions where later judgment is in conflict with and fails to give effect to the motions). Because Wasatch has not appealed the issue of the Okelberrys' standing to represent the interests of the Association, this court addresses the merits without distinguishing between the Okelberrys' and the Association's properties. *See Whitmer v. City of Lindon*, 943 P.2d 226, 228 n. 1 (Utah 1997) (declining to address issue not appealed).

2. The tract was initially purchased by E. Ray Okelberry, his brother, Lee Okelberry, and their father, Roy Okelberry. Sometime after 1957, Ray and Lee Okelberry bought their father's interest in the property. And later, when Lee decided to retire, Ray's sons, Eric and Brian Okelberry, bought Lee's interest. At the present time, Ray, Eric, and Brian Okelberry own the property and continue to use it for their livestock operation.

3. The initial suit included a fifth road, Maple Canyon Road, which the trial court determined had not been abandoned to the public. Because neither party appeals the trial court's decision with respect to Maple Canyon Road, it is not addressed here.

4. An earlier version of this provision, *see* Utah Code Ann. § 27–12–89 (1995), was in effect at the time Wasatch claims dedication or abandonment of the Four Roads occurred. However, the current version, *see id.* § 72–5–104(1) (2001), is "substantively identical" to the earlier version. *State v. Six Mile Ranch Co.*, 2006 UT App 104, ¶ 4 n. 3, 132 P.3d 687. Therefore, in the interests of convenience, all references and citations will be to the current version. *See id.*

the Okelberrys testified that they had, at times, asked people trespassing on the property or the roads to leave. After weighing the evidence, the court assumed the truth of the Okelberrys' factual assertions and nonetheless determined that it was "clear that individuals using the roads beginning in the late 1950s until the late 1980s or early 1990s used the roads without interruption, they used the roads freely, and though not constantly, they used the roads continuously as they needed."

¶ 6 The court also found that the majority of users were members of the general public, traveling without permission, and therefore used the Four Roads as a public thoroughfare. Finally, without defining exactly which ten years the Four Roads were used continuously as public thoroughfares, the court determined that between 1960 and 1990, public use "continued for at least ten years, if not much longer, or for multiple periods of ten years." Thus, the court concluded that the Four Roads had been dedicated to public use "well over ten years prior to 1989 when the Okelberrys began [permanently] locking the gates."

¶ 7 Although determining that the roads had been abandoned and dedicated to the public, the court found that Wasatch was equitably estopped from enforcing the dedication on behalf of the public. The court supported the estoppel determination with two findings. First, that "for a period of twelve years [the Okelberrys] exerted control and used the roads in an openly hostile manner to the public use of the streets." And second, although "little improvements have been made to the roads themselves," the Okelberrys had expended "large amounts of time and money" on their sheep and cattle operations as well as cultivated their business relationship with the CWMU. Wasatch appeals the trial court's judgment that it is equitably estopped from opening the Four Roads to public use, and the Okelberrys cross-appeal the trial court's ruling that the Four Roads are public roads by dedication.

ISSUES AND STANDARDS OF REVIEW

¶ 8 The Okelberrys challenge the trial court's determination that the Four

Roads were abandoned and dedicated to the public under Utah Code section 72–5–104(1). See Utah Code Ann. § 72–5–104(1). "The trial court's ultimate conclusion that the facts of this case either satisfy or do not satisfy the requirements of section 72–5–104(1) is a mixed question of fact and law, which we review for correctness." State v. Six Mile Ranch Co., 2006 UT App 104, ¶ 9, 132 P.3d 687 (citing Heber City Corp. v. Simpson, 942 P.2d 307, 309 (Utah 1997)). However, because the legal requirements of a public highway determination under section 72–5–104(1) are "highly fact dependent and somewhat amorphous," we "give[ ] trial courts a fair degree of latitude in determining the legal consequences ... of facts found by the court." Id. (quotations and citation omitted); accord Heber City Corp., 942 P.2d at 309–10. "'Therefore, when reviewing a trial court's decision regarding whether a public highway has been established under section [72–5–104(1)], we review the decision for correctness but grant the court significant discretion in its application of the facts to the statute.'" Six Mile Ranch Co., 2006 UT App 104 at ¶ 9, 132 P.3d 687 (alteration in original) (quoting Heber City Corp., 942 P.2d at 310).

¶ 9 The Okelberrys also challenge the sufficiency of the evidence, arguing that Wasatch has not provided clear and convincing evidence of continuous use as a public thoroughfare. See Utah Code Ann. § 72–5–104(1). "To establish the dedication of a public road, we require clear and convincing evidence." AWINC Corp. v. Simonsen, 2005 UT App 168, ¶ 7, 112 P.3d 1228 (citing Thomson v. Condas, 27 Utah 2d 129, 493 P.2d 639, 639 (1972)). Where a party challenges the sufficiency of the evidence, "[a]n appellate court must launch any review of factual findings from rule 52(a) of the Utah Rules of Civil Procedure and its clearly erroneous test...." In re Z.D., 2006 UT 54, ¶¶ 28–29, 147 P.3d 401 (quotations omitted); see also Utah R. Civ. P. 52(a) ("Findings of fact ... shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses."). Although it is appropriate for a "reviewing court to consid-

er the standard of proof the prevailing party below was required to meet," the trial court's findings of fact will only be reversed under the clearly erroneous standard embodied in rule 52(a) where a review of the record as a whole demonstrates the result is "against the clear weight of the evidence or leave[s] the appellate court with a definite and firm conviction that a mistake has been made." *In re Z.D.*, 2006 UT 54 at ¶ 40, 147 P.3d 401; *see also Western Kane County Special Serv. Dist. No. 1 v. Jackson Cattle Co.*, 744 P.2d 1376, 1377 (Utah 1987).

■ ¶ 10 Alternatively, Wasatch argues that the trial court erred when it applied equitable estoppel to bar its future attempts to open the Four Roads to public use. "[W]hether the trial court committed reversible error in applying the doctrine of equitable estoppel" to a public road determination is a question of law, which is "reviewed for correctness without any special deference." *Western Kane County*, 744 P.2d at 1377–78.

## ANALYSIS

### I. Dedication to the Public

■ ¶ 11 Under Utah Code section 72–5–104(1), "[a] highway is dedicated and abandoned to the use of the public when it has been continuously used as a public thoroughfare for a period of ten years." Utah Code Ann. § 72–5–104(1). Thus, for a road to become a public highway under the statute, three elements must be met, "there must be (i) continuous use, (ii) as a public thoroughfare, (iii) for a period of ten years." *Heber City Corp.*, 942 P.2d at 310, *quoted in Six Mile Ranch Co.*, 2006 UT App 104 at ¶ 11, 132 P.3d 687.

■ ¶ 12 The Okelberrys argue that the trial court's findings of fact were not supported by clear and convincing evidence; therefore, its conclusions that the Four Roads had been used continuously as public thoroughfares were in error. We will address each of these elements in turn, noting, however, that although each element "embodies a logically distinct requirement that must be satisfied, the elements are so intertwined that they are not readily susceptible to separate discussion." *Id.* at 310 n. 6.

### A. Continuous Use

■ ¶ 13 Under Utah law, continuous use of a road exists when " 'the public, even though not consisting of a great many persons, made a continuous and uninterrupted use' not necessarily every day, but 'as often as they found it convenient or necessary.' " *AWINC Corp.*, 2005 UT App 168 at ¶ 11, 112 P.3d 1228 (quoting *Boyer v. Clark*, 7 Utah 2d 395, 326 P.2d 107, 109 (1958)). It is not required that public use be constant, rather it need only to have " 'occurred as often as the claimant had occasion or chose to pass. . . . Mere intermission is not interruption.' " *Id.* (omission in original) (quoting *Richards v. Pines Ranch, Inc.*, 559 P.2d 948, 949 (Utah 1977)).

■ ¶ 14 The Okelberrys argue that the evidence of continuous use of the Four Roads was not clear and convincing because, at trial, they presented unrebutted evidence showing that the Okelberrys had expelled persons who lacked permission to use the roads and controlled access to the roads through closed gates that were periodically locked. At the heart of the Okelberrys' argument is the proposition that uncontested evidence of a closed or locked gate across a road, or a single instance where a party is ejected from the road, is an interruptive event sufficient to defeat any claim of continuous use by the public as a matter of law. While acknowledging the ease of application of such a bright-line test, we disagree.

¶ 15 In making public road determinations, the Utah Supreme Court has stated that "*all of the facts should be considered together*, and where there is dispute about whether a public use is established, determination of the facts and resolution of the issue is primarily the responsibility of the trial court." *Bonner v. Sudbury*, 18 Utah 2d 140, 417 P.2d 646, 648 (1966) (emphasis added). Prior cases have recognized that the presence of gates, including the frequencies with which they are closed or locked, is a factor to be weighed heavily in making the continuous use determination. *See, e.g., Campbell v. Box Elder County*, 962 P.2d 806, 809 (Utah Ct.App. 1998) (taking into account that road had been

"generally barred by a locked gate," as well as testimony that the public "had been unable to use the road because of the gate"). Nonetheless, the presence of obstructions or gates, open or closed, unlocked or locked, has been treated as only one of the many factors a trial court may consider when determining if the public use was continuous. *See Thurman v. Byram*, 626 P.2d 447, 449 (Utah 1981) (affirming trial court's determination of public road despite finding that road was "periodically block[ed]" during the relevant time). Indeed, the Utah Supreme Court has declined opportunities to rely solely on the presence of a gate, locked or unlocked, to affirm trial courts' determinations that roads have not been dedicated to the public. *See Thomson v. Condas*, 27 Utah 2d 129, 493 P.2d 639, 640–41 (1972) (weighing presence of gates, locked and unlocked, along with signage, lack of governmental maintenance, nature of use, and character of users in finding road was not abandoned); *Gillmor v. Carter*, 15 Utah 2d 280, 391 P.2d 426, 427 (1964) (relying on evidence of gates, as well as signs, grants of permission, past litigation initiated by the property owners alleging private road, and contracts for exclusive use); *cf. Wilhelm v. Pine Meadows Estates, Inc.*, 2001 UT App 285U, No. 20000559–CA, 2001 WL 1178570, at *1–*2, 2001 Utah App. LEXIS 131, at *3–*4 (Oct. 4, 2001) (per curiam) (noting that the owners had blocked access to the road several times but also weighing character of users and nature of use); *Campbell*, 962 P.2d at 809 (examining evidence of locked gate and testimony by members of the public who had been unable to use the road because of the gate). While we leave open the possibility that evidence that a road was blocked by a locked gate may weigh heavily enough, given the other facts and circumstances, to be dispositive of the question of continuous use, we do not accept the Okelberrys' argument that any evidence of a locked gate, no matter how brief, is conclusive evidence of interrupted use.

¶ 16 Strong policy considerations underlie public highway determinations governed by Utah Code section 72–5–104. Utah appellate courts have noted that because "the ownership of property should be granted a high degree of sanctity and respect," *Draper City v. Bernardo*, 888 P.2d 1097, 1099 (Utah 1995), "dedication of property to public use should not be lightly presumed," *Thurman*, 626 P.2d at 448. In consideration of this policy, the Utah Supreme Court has placed the burden of proving the existence of a public road by clear and convincing evidence on the party seeking the dedication. *See Draper City*, 888 P.2d at 1099 ("This higher standard of proof is demanded since the ownership of property should be granted a high degree of sanctity and respect.").

¶ 17 However, adopting the test urged by the Okelberrys would disrupt the delicate balance embodied in the clear and convincing standard. If a property owner was able to defeat a dedication claim by simply providing self-serving testimony that at some point she interrupted use of a road by locking a gate for a single short period of time within a ten-year period or ejecting a single person from the road, the dedication statute would be eviscerated. *Cf. Petersen v. Combe*, 20 Utah 2d 376, 438 P.2d 545, 546–47 (1968) (reversing trial court's determination of dedication where evidence was almost exclusively provided by self-serving witnesses "having their own special and private interests in the road"); *Bonner*, 417 P.2d at 648 ("Resolution of [a dedication] issue cannot rest entirely upon what the owner says was his intent. In case controversy arises he can always avow that his intent was in accord with his interest." (footnote omitted)). At the same time, we note the difficulty property owners face in locating disinterested witnesses to testify that they were prevented from using the roads at their convenience or the time of their choosing because they met with a locked gate or were turned away.[5] It is precisely for these reasons that a trial court is given great latitude in weighing the facts in light of the credibility and motivation of witnesses when determining if use of a road by the public was continuous. *See Petersen*, 438 P.2d at 549 (Crockett, C.J., dis-

5. These failed attempts to use the road may be unknown to the property owners. Even in cases where the property owner ejected a member of the public, he is unlikely to retain identification or contact information that could be used to subpoena the member of the public for trial.

senting) (noting that "it is the prerogative of the trial judge to determine whether the tests [for dedication] have been met" including a weighing of interested witness's testimony).

¶ 18 Thus, the question of continuous use should be approached as a multifaceted inquiry that requires a trial court to weigh all the evidence presented in light of the credibility of witnesses. We recognize that evidence of gates, and in particular locked gates, during the relevant period is strong evidence of interrupted use. *See, e.g., Campbell,* 962 P.2d at 809 (noting that trial court's determination that there was not continuous use was permissibly premised on finding that road was "generally barred by a locked gate"); *Cox v. Cox,* 84 Idaho 513, 373 P.2d 929, 933 (1962) ("Where gates are in existence across a road barring the passage and making it necessary to open them in order to use the road, the existence of such gates is considered as strong evidence that the road was not a public road."); *cf. Thomson,* 493 P.2d at 640–41 (discussing gates, chains, and padlocks across road in affirming trial court's determination that dedication had not occurred). Nonetheless, in some instances, evidence of a gate, even a locked gate, may not weigh heavily enough to establish that there was an interruption of continuous use. *See, e.g., Utah County v. Butler,* 2006 UT App 444, ¶¶ 12–15 (affirming trial court's determination of dedication even where property owners presented evidence that gate across road had at one time been locked). In deciding whether a locked gate acted as an interruptive force sufficient to restart the running of the statutory ten-year period, the trial court should weigh the evidence regarding the duration and frequency that the gate was locked against the frequency and volume of public use to determine if there is clear and convincing evidence that public use of the road was continuous.

¶ 19 In this case, the trial court balanced the frequency and duration that the gates were locked against the frequency and volume of public use. The trial court found that even were it to accept as true "that beginning in the 1960s the gates were periodically locked for several days at a time," it was nonetheless "clear that individuals using the roads beginning in the late 1950s until the late 1980s or early 1990s used the roads without interruption, . . . and though not constantly, they used the roads continuously as they needed."

¶ 20 The trial court's conclusion is supported in the record. Several witnesses testified that they used the Four Roads during the relevant period and were never asked to leave and never encountered a locked gate. "[W]e do not set aside the trial court's factual findings unless they are against the clear weight of the evidence or we otherwise reach a definite and firm conviction that a mistake has been made." *Western Kane County Special Serv. Dist. No. 1 v. Jackson Cattle Co.,* 744 P.2d 1376, 1377 (Utah 1987). No such conviction is held here. Clear and convincing evidence may be premised on "[t]he testimony of one credible witness[ ] if believed by the court or jury." *Bonner v. Sudbury,* 18 Utah 2d 140, 417 P.2d 646, 648 (1966). Here, the trial court may have relied on any one of many witnesses. We do not, therefore, disturb the trial court's conclusion that there was continuous use.

### B. Public Thoroughfare

¶ 21 Three general requirements must be met to demonstrate that the road at issue was used as a public thoroughfare: "(i) [t]here must be passing or travel, (ii) the use must be by the public, [and] (iii) use by permission does not constitute use as a public thoroughfare." *Heber City Corp. v. Simpson,* 942 P.2d 307, 311 (Utah 1997) (quotations omitted). The Okelberrys do not challenge the trial court's findings that there was passing or travel nor do they challenge that the travel was engaged in by members of the public. Rather, the Okelberrys assert that it was error for the trial court to find that there was clear and convincing evidence of use as a public thoroughfare because they presented uncontested evidence that gates were maintained on the Four Roads throughout the relevant period. More simply, the Okelberrys argue that the mere presence of a gate, locked or unlocked, is conclusive proof of permissive use and therefore may, as a single inquiry, defeat a finding of public thor-

oughfare. This court has rejected such a construction of Utah law.

¶ 22 "It is firmly established under Utah law that permissive use cannot result in either adverse possession or dedication of private property to the public." *Campbell v. Box Elder County*, 962 P.2d 806, 809 (Utah Ct.App.1998) (citing *Heber City Corp.*, 942 P.2d at 311–12; *Thurman v. Byram*, 626 P.2d 447, 449–50 (Utah 1981)). In *Campbell v. Box Elder County*, we recognized that a property owner's use of a gate was strong evidence, but not conclusive proof, of permissive use. *See* 962 P.2d at 809. There, we affirmed the trial court's determination that use was permissive where it was supported by evidence showing "the Campbells had unlocked the gate every year except 1994 for deer hunting season and had relocked it at the end of each hunting season." *Id.* However, we have since clarified the treatment of gates in *Campbell* by explaining that it is not the presence of the gate, alone, that indicates permissive use. *See State v. Six Mile Ranch Co.*, 2006 UT App 104, ¶ 23, 132 P.3d 687. Instead, *Campbell* stood "for the proposition that an overt act, such as locking and unlocking a gate, provides evidence of permissive use." *Id.* While the overt act of locking and unlocking the gate under the facts and circumstances in *Campbell* was an indication of permissive use, the erection of a gate by a property owner does not conclusively establish the character of the public use as permissive because a gate "may be erected for purposes other than obstruction of public travel." *McIntyre v. Board of County Comm'rs*, 86 P.3d 402, 409–10 (Colo.2004) (quotations and citation omitted). For example, because a gate may be erected across a public road for the purpose of controlling livestock, *see* Utah Code Ann. § 72–7–106 (2001), gates across roads do not always carry an inference of permissive use. *See, e.g., Lemont Land Corp. v. Rogers*, 269 Mont. 180, 887 P.2d 724, 728 (1994) (noting that where "the gate was used to control livestock, not travel," it was insufficient evidence to support a conclusion of permissive use).

¶ 23 Therefore, "[w]hile evidence of a fence or gate on the road gives rise to a strong indication that any public use of the road is permissive, their existence does not provide the landowner with a conclusive presumption that the use is permissive." *McIntyre*, 86 P.3d at 412; *see also Tomlin Enters., Inc. v. Althoff*, 2004 MT 383, ¶ 19, 325 Mont. 99, 103 P.3d 1069 ("[T]he fact that the passage of a road has been for years barred by gates or other obstructions to be opened and closed by the parties passing over the land, has always been considered as strong evidence in support of a mere license to the public ...." (quotations and citation omitted)). Instead, trial courts are given wide latitude to determine if use is permissive because the "legal requirements [of section 72–5–104], other than the ten-year requirement, are highly fact dependent and somewhat amorphous." *Heber City Corp.*, 942 P.2d at 310.

¶ 24 The Utah Supreme Court has warned that in public road dedication cases, appellate courts should not attempt to "establish a coherent and consistent statement of the law on a fact-intensive, case-by-case review of trial court rulings." *Id.* Thus, under Utah law, trial courts are "permitted some reign to grapple with the multitude of fact patterns that may constitute a ... [public thoroughfare] determination." *Kohler v. Martin*, 916 P.2d 910, 913 (Utah Ct.App.1996) (alteration and omission in original) (quotations and citation omitted). Because the trial court has significant discretion to weigh the myriad facts that provide evidence of non-permissive use, the trial court's determination that travel on the Four Roads was without permission is adequately supported by the record as is its determination that the Four Roads were used as public thoroughfares. Several witnesses testified to using the Four Roads for decades without seeking or obtaining permission and without encountering locked gates. Additionally, testimony from both parties tended to support the trial court's conclusion that the gates were primarily in place as a method of controlling the Okelberrys' livestock operations, not for the purpose of controlling public use. Both of these findings are sufficient to sustain the trial court's conclusion that the Four Roads were used without permission as public thoroughfares. *See*

*Thurman,* 626 P.2d at 449 (affirming finding of public thoroughfare and noting that "[a]lthough testimony in the instant case indicated some of the use . . . was with permission, there was clear and convincing evidence of frequent and general use of the road without defendants' permission").

¶ 25 Because we do not have a firm conviction that the trial court was mistaken, we do not disturb the trial court's findings that the Four Roads were used continuously as public thoroughfares for a period of at least ten years. We affirm the trial court's determination that the Four Roads were dedicated to the public by action of Utah Code section 72–5–104. *See* Utah Code Ann. § 72–5–104(1). Upon affirming the trial court's judgment that the Four Roads were public roads, it is necessary to address the issue of equitable estoppel raised by Wasatch on appeal.

## II. Equitable Estoppel

¶ 26 Wasatch challenges the trial court's determination that Wasatch is equitably estopped from asserting the public's rights in the Four Roads because it had failed to do so for a period of twelve years. As a general rule, once a road is dedicated and abandoned to the public under section 72–5–104(1), subsequent acts by the property owner to limit the public's use cannot change its status as a public highway. *See* Utah Code Ann. § 72–5–105 (Supp.2006); *Heber City Corp. v. Simpson,* 942 P.2d 307, 313 n. 12 (Utah 1997) (noting that the fact that the road had not been used by the public for several years "d[id] not change its status as a public highway"); *Western Kane County Special Serv. Dist. No. 1 v. Jackson Cattle Co.,* 744 P.2d 1376, 1377–78 (Utah 1987) (holding road was still a public highway although fifty years had passed since the road was used by the public); *Clark v. Erekson,* 9 Utah 2d 212, 341 P.2d 424, 425–26 (1959) (requiring landowner to remove encroachments on public highway even though some of the structures had been in place more than thirty years). Instead, under Utah Code section 72–5–105, "all public highways . . . once established shall continue to be highways . . . until abandoned or vacated by order." Utah Code Ann. § 72–5–105(1). The

Utah Supreme Court has interpreted the language of this section to require strict compliance with statutory procedures to effect an abandonment or vacation of a public road by the government. *See Ercanbrack v. Judd,* 524 P.2d 595, 597 (Utah 1974).

¶ 27 There is no dispute that the Four Roads have not been abandoned or vacated by order under section 72–5–105(1). Despite the requirements of that section, "there may be circumstances so extreme that" the doctrine of equitable estoppel may be applied against the government "to prevent the assertion of rights in a public highway." *Western Kane County,* 744 P.2d at 1378. However, to remain "in harmony with the expressed will of the legislature, which requires that a strict statutory procedure be followed for the vacation of a public road," courts should be "extremely reluctant to apply the doctrine of estoppel against the assertion of rights in a public highway by a government entity." *Id.*

¶ 28 To prevail on their claim of equitable estoppel, the Okelberrys were required to show three elements:

(1) an admission, statement, or act inconsistent with the claim afterward asserted,

(2) action by the other party on the faith of such admission, statement, or act, and

(3) injury to such other party resulting from allowing the first party to contradict or repudiate such admission, statement, or act.

*Celebrity Club, Inc. v. Liquor Control Comm'n,* 602 P.2d 689, 694 (Utah 1979). Additionally, when estoppel is asserted against the government, the admission, statement, or act relied upon must amount to a "very clear, well-substantiated representation[ ] by [the] government entit[y]." *Anderson v. Public Serv. Comm'n,* 839 P.2d 822, 828 (Utah 1992). More specifically, in public roads cases, the Utah Supreme Court has indicated that the admission, statement, or act by the government must be an affirmative representation. *See Wall v. Salt Lake City,* 50 Utah 593, 168 P. 766, 769 (1917) (noting that case was uncommon and suitable for the application of estoppel because "the municipality by its own *affirmative* acts, declarations, and conduct,

misled the [property owner]" (emphasis added)).

¶ 29 The Okelberrys argue that *Premium Oil Co. v. Cedar City*, 112 Utah 324, 187 P.2d 199 (1947), set out a special test for estoppel against the government in public roads cases whereby estoppel may be premised on the government's acquiescence in the private party asserting exclusive control over the roads. We disagree. The Okelberrys rely on the language in *Premium Oil* that states:

> [W]here the public have long withheld the assertion of control over streets, and private parties have been ... induced to believe the streets abandoned by the public, ... *with the acquiescence of those representing the public* ... the doctrine of equitable estoppel may be applied.

*Id.* at 204 (emphasis added) (quotations omitted). However, any exception created by *Premium Oil* allowing the assertion of estoppel against the government in public roads cases, where reliance is premised on government inaction or acquiescence, was abrogated by subsequent legislation and case law. *Cf. Western Kane County*, 744 P.2d at 1378 ("We are extremely reluctant to apply the doctrine of estoppel against the assertion of rights in a public highway by a government entity. This reluctance is in harmony with the expressed will of the legislature, which requires that a strict statutory procedure be followed for the vacation of a public road." (citation omitted)).

¶ 30 At the time *Premium Oil* was decided in 1947, the law governing abandonment of a public road was found in Utah Code section 36–1–3 and stated: "All highways once established must continue to be highways *until abandoned* by order of ... competent authority." Utah Code Ann. § 36–1–3 (1943) (emphasis added). Thus, the statute only required that the highway be "abandoned," and it may have been possible for a private

property owner to reasonably rely on the government's "abandonment" or acquiescence in private control as an element of an estoppel claim. *See Premium Oil*, 187 P.2d at 204. However, in 1963, the Utah Legislature amended the language of section 36–1–3 [6] by enactment of Utah Code section 27–12–90, which stated: "All public highways once established shall continue to be highways until *abandoned or vacated* by order of ... competent authority." Act of 1963, ch. 39, § 90, 1963 Utah Laws 114, 141; Utah Code Ann. § 27–12–90 (1969) (emphasis added). In addition to the "abandoned or vacated" language of the 1963 amendment, the highway code was also amended in 1965, creating a strict statutory procedure for "abandon[ing] or vacat[ing]" a public highway. *See* Act of 1965, ch. 52, §§ 1–5, 1965 Utah Laws 154, 154–56; Utah Code Ann. §§ 27–12–102.1 to –102.5 (Supp.1969). Decisions of the Utah Supreme Court following enactment of these statutory procedures make it clear that a public highway may only be abandoned or vacated when there has been strict statutory compliance. *See Western Kane County*, 744 P.2d at 1378; *Henderson v. Osguthorpe*, 657 P.2d 1268, 1270 (Utah 1982); *Ercanbrack*, 524 P.2d at 597.

¶ 31 Thus, under the modern statutes [7] and case law, a private property owner would no longer be able to reasonably rely on the government's acquiescence in private control to establish a claim of estoppel. *See Western Kane County Special Serv. Dist. No. 1 v. Jackson Cattle Co.*, 744 P.2d 1376, 1378 (Utah 1987) ("[E]stoppel should not be available to circumvent the statutory process."). Instead, a property owner can only claim reasonable reliance where the governmental entity has made some affirmative representation that it intended to abandon or vacate the road in compliance with the statutory procedure. To hold otherwise would come dangerously close to recognizing a form

---

**6.** Utah Code section 36–1–3 was renumbered in 1953 to section 27–1–3 without changing the language. *See* Utah Code Ann. § 27–1–3 (1953) (amended 1963).

**7.** Utah Code section 27–12–90 was renumbered in 1998 to section 72–5–105(1) and remains substantively unchanged. *See* Act of 1998, ch. 270,

§ 133, 1998 Utah Laws 806, 861; Utah Code Ann. § 72–5–105 (Supp.2005). The current statutory procedure for abandoning or vacating a public road can be found at Utah Code section 72–3–108. *See* Utah Code Ann. § 72–3–108 (2001).

of adverse possession against the government whereby a private party could obtain equitable rights in a public road merely by exercising adverse control for a period of time. Utah law expressly prohibits any person from acquiring rights in a public road by adverse possession. *See* Utah Code Ann. § 78–12–13 (2002).

¶ 32 In this case, there was no evidence that Wasatch made any representation with respect to the Four Roads, let alone a representation that the statutory procedures had been or would be followed to abandon or vacate the Four Roads.[8] Instead, the trial court based its estoppel determination on the fact that Wasatch acquiesced in the private control by "failing to bring an action for twelve years." Therefore, we reverse the trial court's judgment preventing Wasatch from enforcing the public's rights in the Four Roads.[9]

## CONCLUSION

¶ 33 We do not have a firm conviction that the trial court erred when it determined that the Four Roads were dedicated and abandoned to the public pursuant to Utah Code section 72–5–104(1) after having been continuously used as public thoroughfares for a period of at least ten years. We also conclude that it was reversible error for the trial court to apply the doctrine of equitable estoppel against Wasatch's attempts to enforce the public's rights to use the Four Roads. We therefore affirm in part and reverse and remand in part for entry of judgment consistent with this decision.

¶ 34 WE CONCUR: RUSSELL W. BENCH, Presiding Judge, GREGORY K. ORME, Judge.

8. Because we hold that the Okelberrys have not met the first element of a claim for equitable estoppel, we need not address the remaining elements.

9. Although our holding allows Wasatch to enforce the public's rights to access the Four Roads, nothing in this opinion should be read to suggest that the public has obtained any rights, hunting or otherwise, with respect to the Okelberrys' private property abutting the roads. On the contrary, members of the public are only free to travel over the Four Roads and have no rights, absent permission from the Okelberrys, to enter onto their land, which remains private.