2010 UT App 13

**WASATCH COUNTY, a body politic of State of Utah, Plaintiff and Appellee,**

v.

**E. Ray OKELBERRY, Brian Okelberry, Eric Okelberry, West Daniels Land Association, Utah Division of Wildlife Resources, and John Does 1–25, Defendants and Appellants.**

No. 20080988–CA.

Court of Appeals of Utah.

Jan. 28, 2010.

Don R. Petersen and Leslie W. Slaugh, Provo, for Appellants.

Thomas L. Low and Scott H. Sweat, Heber City, for Appellee.

Before Judges ORME, THORNE, and BENCH.[1]

## OPINION

THORNE, Judge:

¶ 1 Defendants E. Ray Okelberry, Brian Okelberry, Eric Okelberry, and West Daniels Land Association (collectively, the Okelberrys) appeal from the trial court's October 23, 2008 order made following an order of remand by the Utah Supreme Court, *see Wasatch County v. Okelberry*, 2008 UT 10, 179 P.3d 768. The Okelberrys argue that the trial court improperly applied the standard for ascertaining continuous use as a public thoroughfare under Utah Code section 72–5–104 (the Dedication Statute), *see* Utah Code Ann. § 72–5–104 (2009). The Okelberrys assert that the district court erred in its application of the Utah Supreme Court's recently articulated standard for determining what qualifies as a sufficient interruption to restart the running of the required ten-year period under the Dedication Statute. The Okelberrys also argue that the trial court erred in denying Defendants' Motion for Entry of Supplemental Findings and Conclusion; Or Alternatively For New Trial Or Presentation of Additional Evidence. We reverse and remand.

## BACKGROUND

¶ 2 This is an appeal from the trial court's decision on remand, and detailed facts are set forth in *Wasatch County v. Okelberry*, 2006 UT App 473, ¶¶ 2–7, 153 P.3d 745, and *Wasatch County v. Okelberry*, 2008 UT 10,

1. Judge Russell W. Bench voted on this case as a regular member of the Utah Court of Appeals. However, he retired from the court on January 1, 2010, before this decision issued. Hence, he is designated herein as a Senior Judge. *See* Utah Code Ann. § 78A–3–103(2) (2008); Sup.Ct. R. of Prof'l Practice 11–201(6).

¶¶ 2–7, 179 P.3d 768. We reiterate only the facts relevant to the issues addressed in this appeal.

¶ 3 The Okelberrys are owners of real property located in Wasatch County. Several unimproved roads cross through sections of the Okelberrys' property. On August 24, 2001, Wasatch County filed a complaint for declaratory judgment and quiet title against the Okelberrys, seeking to have the roads that cross the Okelberrys' property declared dedicated and abandoned to public use pursuant to the Dedication Statute.

¶ 4 During a three-day bench trial, Wasatch County presented several witnesses that testified they had used the roads at issue without the Okelberrys' permission for recreational purposes during the 1960s, 1970s, and 1980s. The Okelberrys presented evidence and testimony that members of the public had not had unrestricted access to the roads, but that gates on the roads had been locked, at least occasionally, as early as the late 1950s and that "No Trespassing," "Keep Out," or "Private" signs were posted.

¶ 5 At the conclusion of the bench trial, the trial court entered findings of fact and found by clear and convincing evidence that the roads at issue had become dedicated and abandoned to public use. The trial court further decided that Wasatch County was equitably estopped from opening the roads to public use because the Okelberrys had, since 1989, asserted private control over the roads. Wasatch County appealed the trial court's equitable estoppel determination, and the Okelberrys cross-appealed the trial court's decision that the roads had been dedicated to the public. The court of appeals reversed the trial court's equitable estoppel decision and affirmed the decision regarding the public dedication of the roads. *See Okelberry,* 2006 UT App 473, ¶ 33, 153 P.3d 745.

¶ 6 The Okelberrys filed a petition for writ of certiorari to the Utah Supreme Court, which that court granted. In the resulting opinion, the supreme court recognized the need to clarify the law, *see Okelberry,* 2008 UT 10, ¶ 12, 179 P.3d 768, and articulated a standard for determining what qualifies as a sufficient interruption to restart the running of the required ten-year period under the Dedication Statute, *see id.* ¶ 15 ("An overt act that is intended by a property owner to interrupt the use of a road as a public thoroughfare, and is reasonably calculated to do so, constitutes an interruption sufficient to restart the running of the required ten-year period under the Dedication Statute."). In applying the newly articulated standard, the supreme court noted that several factual questions remained regarding whether the Okelberrys intended the signs to interrupt public use of the roads, *see id.* ¶ 18 ("[W]hile it is clear that the posting of the signs constituted an overt act, it remains a factual question whether the Okelberrys intended the signs to interrupt public use of the roads and whether the posting of the signs was reasonably calculated to do so. Questions also remain as to when the signs were posted and whether trespassers were asked to leave, and if so, when and how many."), and whether and when the Okelberrys locked the gates, *see id.* ¶ 19 ("The Okelberrys also claimed at trial that the gates were periodically locked for several days at a time beginning in the late 1950s. Here again, while the trial court assumed this claim to be true for purposes of its analysis, it did not make a factual finding on this issue.... [F]actual questions remain as to whether and when such an event or events occurred."). The supreme court remanded the case for the trial court to make these factual determinations.

¶ 7 On remand, Wasatch County filed a motion for further findings. The Okelberrys responded and filed a cross-motion seeking supplemental findings, a new trial, or for leave to present additional evidence to address the supreme court's recently articulated interruption standard. The trial court held oral arguments, made further specific findings of fact, and held that, under the Dedication Statute, each of the four roads was dedicated and abandoned to the use of the public by continuous use as a public thoroughfare for over ten years.

## ISSUES AND STANDARDS OF REVIEW

■ ¶ 8 The Okelberrys argue that the trial court erred by inappropriately utilizing the "interruption of continuous use" element

of the Dedication Statute. On appeal, "[a]n appellate court ... reviews a trial court's decision regarding whether a public highway has been established under [the Dedication Statute] ... for correctness but grant[s] the court significant discretion in its application of the facts to the statute." *Utah County v. Butler*, 2008 UT 12, ¶ 9, 179 P.3d 775 (second omission and second and third alterations in original) (internal quotation marks omitted).

 ¶ 9 The Okelberrys also argue that the trial court erred in denying their motion seeking either a new trial or presentation of additional evidence. "Generally, [a] trial court has discretion in determining whether to grant or deny a motion for a new trial, and [appellate courts] will not reverse a trial court's decision absent clear abuse of that discretion." *Markham v. Bradley*, 2007 UT App 379, ¶ 14, 173 P.3d 865 (alterations in original) (internal quotation marks omitted).

## ANALYSIS

¶ 10 The Okelberrys assert that the trial court misapplied the "interruption of the continuous use" element of the Dedication Statute that was recently articulated in *Wasatch County v. Okelberry*, 2008 UT 10, ¶ 15, 179 P.3d 768. Specifically, the Okelberrys argue that the trial court erred by focusing on whether there was *actual* impact or *actual* interference of public use of a road, rather than whether the property owners intended to interrupt the use of the road. Additionally, the Okelberrys argue that the trial court erred by refusing to give them the opportunity to present intent evidence pursuant to the new interruption standard when it denied the Okelberrys' motion for a new trial or the presentation of additional evidence.

¶ 11 In *Okelberry*, the Utah Supreme Court set forth a bright-line rule for determining what qualifies as an interruption in continuous use sufficient to restart the running of the Dedication Statute's ten-year period: "An overt act that is intended by a property owner to interrupt the use of a road as a public thoroughfare, and is reasonably

calculated to do so, constitutes an interruption sufficient to restart the running of the required ten-year period under the Dedication Statute." *Id.* ¶ 15. The supreme court explained that credible evidence of such an interruption precludes a finding of continuous use. *See id.* In its decision, the supreme court pointed out that the trial court had assumed the Okelberrys' assertions regarding the posted signs and periodic locked gates to be true for purposes of its analysis but did not make any actual findings. *See id.* ¶¶ 18–19. The supreme court remanded the case with directions to the trial court to make factual findings regarding the Okelberrys' evidence of interruption in continuous use. *See id.* ¶ 19.

¶ 12 Upon remand, the trial court reviewed the file and trial transcript, considered the parties' memoranda, heard oral argument, and entered further specific findings of facts. In its ruling, the trial court summarized the witness testimony and evidence pertaining to locked gates, unlocked gates, asking trespassers to leave, and posting of signs. The trial court made the following findings:[2]

> 20. The Court finds that there were gates at the entrances to each of the roads from 1957 to 2004.
>
> . . . .
>
> 24. The Court finds that though the Okelberrys may have locked some of the gates at some points between the 1950s and 1990s, this did not restrict travel on the roads. *There was no credible evidence presented that the Okelberrys intended to or actually did restrict travel prior to the 1990s due to the locking of gates.* While Ray Okelberry testified that he locked gates beginning either in 1957 or 1958, *he did not testify that he intended to keep the public from accessing the roads at this time.* Lee Okelberry and Brian Okelberry, both [the Okelberrys'] witnesses, testified that the boundary gates at the entrances of the roads were never locked until at least the 1980s. Several of [Was-

---

2. The trial court made findings regarding whether the Okelberrys locked gates, asked trespassers to leave, and posted "Keep Out" signs. However, the Okelberrys' argument on appeal focuses on the locked gates issue. Therefore, we reproduce only the trial court's findings pertaining to the locked gates issue.

atch County's] witnesses also testified to this effect.

(Emphasis added.)

■ ¶ 13 Contrary to the trial court's findings, the standard articulated by the supreme court does not require that the overt act actually restrict public access. *See Town of Leeds v. Prisbrey*, 2008 UT 11, ¶ 7, 179 P.3d 757 (companion case to *Okelberry*, 2008 UT 10, 179 P.3d 768) ("Although [the defendant] did not block the public's *actual* use of the road because her roadblocks occurred during intermissions in the road's use, [the defendant's] intent and conduct were nevertheless sufficient to interrupt [the s]treet's continuous use as a public thoroughfare for purposes of the Dedication Statute."). Instead, to constitute an interruption for purposes of the Dedication Statute, the locking of gates need only be done with the intent to interrupt the use of a road as a public road. *See Utah County v. Butler*, 2008 UT 12, ¶ 16, 179 P.3d 775 (companion case to *Okelberry*, 2008 UT 10, 179 P.3d 768) ("Although gates can, under appropriate circumstances, constitute an interruption for purposes of the Dedication Statute, the gates on the [r]oad were not erected or locked with the requisite intent and therefore did not interrupt the public's continuous use of the [r]oad." (footnote omitted)).

¶ 14 It is clear from *Okelberry* and its two companion cases that a trial court need not find whether locked gates or other overt acts actually restricted public use of a road. Instead, the interruption standard stresses the importance that the overt act be done with the requisite intent, i.e., the intent, reasonably calculated, to interrupt the public's continuous use of the road, regardless of whether the act actually does restrict public use.[3] Thus, we conclude that the trial court erred to the extent it focused its ruling on the impact or actual interference of public use of the roads at issue in this case rather than focusing on the Okelberrys' intent in locking the gates.

¶ 15 We also conclude that the trial court failed to make factual findings as to whether and when the Okelberrys locked the gates.

The supreme court remanded the case to the trial court, in part, for findings regarding the factual questions as to whether and when the Okelberrys locked the gates. *See Wasatch County v. Okelberry*, 2008 UT 10, ¶ 19, 179 P.3d 768. The trial court did not make such specific findings and found instead that "*the Okelberrys may have locked some of the gates at some points* between the 1950s and 1990s" and that "*there may have been occasions in which Mr. Okelberry locked the gates* in the 1950s, 1960s, and 1970s, [but] these were few and far between." (Emphasis added.) These findings do not address the supreme court's remand order for specific findings on the locking of gates.

■ ¶ 16 The Okelberrys next argue that in light of the newly articulated interruption standard, the trial court erred when it denied the Okelberrys' motion for new trial or, in the alternative, their request to present additional evidence. Indeed, the case law prior to the supreme court's articulation of the bright-line rule on the interruption standard in *Okelberry* was unclear as to whether intent by the property owner to interrupt use of the road was even relevant to a determination of the continuous use element of the Dedication Statute. *See Wasatch County v. Okelberry*, 2006 UT App 473, ¶¶ 15–18, 153 P.3d 745 (discussing the confusion related to the factors a trial court may consider when determining if a public use was continuous and attempting to articulate a workable interpretation of "continuous use" in the context of the Dedication Statute). Additionally, the case law previous to the articulation of the interruption standard appeared to focus on the frequency and duration of the interruption during a ten-year period. *See id.* ¶ 15 ("Prior cases have recognized that the presence of gates, including the frequencies with which they are closed or locked, is a factor to be weighed heavily in making the continuous use determination.").

¶ 17 Upon remand, the trial court found that "while there may have been occasions in which Mr. Okelberry locked the gates in the 1950's, 1960's and 1970's, these were few and

---

3. We note that it is not necessary that the overt act be a continuous interruption of public use. One overt act with the requisite intent is sufficient.

far between, *were not intended to restrict public access,* and were not reasonably calculated to interrupt public use of the roads." (Emphasis added.) It is not clear from the record whether this finding was based on actual evidence that the Okelberrys locked the gate with only an alternative purpose, i.e., to keep livestock within, or was simply based on the lack of any intent evidence.

¶ 18 Even if some evidence of intent was presented at the trial, this does not mean that the parties were afforded an adequate opportunity to present all of their evidence on this determinative issue. The relevance of intent evidence was unclear at the time of trial, as the supreme court had yet to announce its new interruption standard in *Okelberry. See Okelberry,* 2008 UT 10, ¶ 15, 179 P.3d 768. Because the prior case law was unclear, the need to present intent evidence at trial was also not clear. The supreme court has since made abundantly clear that the intent behind the actions of the landowner is a determining factor in considering application of the statute. As a matter of fairness, the parties should be given an opportunity to present supplemental evidence on the question of intent to interrupt public use of the roads. *Cf. Dairy Prod. Servs., Inc. v. City of Wellsville,* 2000 UT 81, ¶ 49, 13 P.3d 581 ("[D]ue process is flexible and, being based on the concept of fairness, should afford the 'procedural protections that the given situation demands.'" (citation omitted)). Accordingly, we reverse the trial court's denial of the Okelberrys' motion seeking either a new trial or presentation of additional evidence, and we remand the case for further proceedings consistent with this opinion.[4]

## CONCLUSION

¶ 19 The Utah Supreme Court in *Okelberry,* 2008 UT 10, 179 P.3d 768, held that "[a]n overt act that is intended by a property owner to interrupt the use of a road as a public thoroughfare, and is reasonably calculated to do so, constitutes an interruption sufficient to restart the running of the re-

quired ten-year period under the Dedication Statute." *Id.* ¶ 15. This standard does not require that the overt act actually and continuously restrict public access. *See Town of Leeds v. Prisbrey,* 2008 UT 11, ¶ 7, 179 P.3d 757. Instead, the standard requires that the overt act be reasonably calculated by the property owner to interrupt public use of a road. *See Utah County v. Butler,* 2008 UT 12, ¶ 16, 179 P.3d 775. Thus, the trial court, to the extent it focused its findings and ruling chiefly on actual restriction of the public use of the roads, misapplied the interruption standard.

¶ 20 Case law prior to the supreme court's articulation of the interruption standard was unclear as to whether the property owners' intent to interrupt use of the road was relevant to a determination of the continuous use element of the Dedication Statute. Because the relevance of intent evidence was unclear at the time of the trial in this case, the parties should be given an opportunity to present supplemental evidence regarding any intent to interrupt public use. Accordingly, we reverse the trial court's decision to deny the Okelberrys' motion for a new trial or in the alternative request to present additional evidence of intent. We remand this case with instructions to the trial court to give the parties an opportunity to present evidence related to the Okelberrys' intent to interrupt public use and to identify with more specificity whether and when the gates were closed and locked and the intent of those actions.

¶ 21 WE CONCUR: GREGORY K. ORME, Judge and RUSSELL W. BENCH, Senior Judge.

---

4. The presentation of supplemental intent evidence clearly will not require an entirely new trial in this case. So long as the parties have a fair opportunity to present their intent evidence, the trial court has the discretion as to the process.