2006 UT App 444

UTAH COUNTY; and State of Utah, by and through its Department of Natural Resources, Division of Wildlife Resources, Plaintiffs, Appellees, and Cross-appellant,

v.

Randy BUTLER, Donna Butler, Blaine Evans, Linda Evans, Margaret Condley, Elizabeth Condley, and John Does 1–15, Defendants, Appellants, and Cross-appellees.

No. 20040809–CA.

Court of Appeals of Utah.

Nov. 2, 2006.

Scott L. Wiggins, Arnold & Wiggins PC, Salt Lake City, for Appellants.

Mark L. Shurtleff, Attorney General, and Martin B. Bushman, Assistant Attorney General, Salt Lake City, and M. Cort Griffin and Robert J. Moore, Utah County Attorney Office, Provo, for Appellees.

Before Judges BENCH, McHUGH, and THORNE.

## OPINION

BENCH, Presiding Judge:

¶ 1 Defendants Randy Butler, Donna Butler, Blaine Evans, and Linda Evans appeal the trial court's conclusion that Bennie Creek Road (the Road) is a public highway under Utah Code section 72-5-104(1) (the Dedication Statute). *See* Utah Code Ann. § 72-5-104(1) (2001). Utah County cross-appeals the trial court's decision to deny statutory damages caused by Defendants' refusal to remove a gate after receiving service of notice. We affirm in part and remand for a determination of statutory damages owed to Utah County.

## BACKGROUND

¶ 2 The Road runs west from U.S. Highway 89 into the Uinta National Forest (the National Forest), providing access to camping areas, hiking trails, and the Nebo Loop. Portions of the Road cross Defendants' properties before reaching the National Forest. In 1996, Defendants prevented public access to the Road by erecting a metal gate. On July 29, 1997, the Utah County Board of Commissioners served Defendants with notice ordering the removal of the gate from the Road. Because Defendants refused to remove the gate, Utah County and the State of Utah Department of Natural Resources (Plaintiffs) brought this action to have the Road declared a public highway and to force the removal of the metal gate.

¶ 3 Following an eight-day bench trial in June 2004, the court concluded that the Road had been dedicated to public use long ago and ordered the gate removed. At trial, the court heard testimony from previous and current landowners, various users of the Road, National Forest workers, and public employees assigned to maintain the Road. The testimony conflicted as to the prior use of gates, placement of no-trespassing signs, and ownership reactions to public use of the road. After evaluating the credibility of the witnesses and weighing the evidence, the trial court ultimately determined that the Road had been open to public use from the mid-1920s until about 1980.

¶ 4 The trial court issued a memorandum decision directing Plaintiffs to prepare a final order containing factual findings and conclusions of law consistent with those outlined in the memorandum. Defendants objected to the proposed findings of fact, conclusions of law, and order submitted by Plaintiffs, and requested a hearing. The trial court signed the proposed order without holding a hearing. Defendants now appeal.

¶ 5 Despite concluding that the Road had been dedicated to public use and that Defendants did not remove the gate after receiving proper notice, the trial court refused to award Utah County its demand for statutory damages. In refusing to make the award, the trial court ruled that conflicting evidence in the record as to whether the gate was locked prevented the court from being able to accurately calculate damages. Utah County cross-appeals the refusal to award statutory damages.

## ISSUES AND STANDARDS OF REVIEW

¶ 6 Defendants argue that the trial court erred by determining that the Road was dedicated to public use under Utah Code section 72-5-104(1). *See* Utah Code Ann. § 72-5-104(1) (2001). "[W]hen reviewing a trial court's decision regarding whether a public highway has been established . . ., we review the decision for correctness but grant the court significant discretion in its application of the facts to the statute." *Heber City Corp. v. Simpson,* 942 P.2d 307, 310 (Utah 1997).

¶ 7 Defendants also assert that the trial court abused its discretion by failing to rule on their objections to the proposed findings of fact, conclusions of law, and order. In challenging a discretionary decision of the trial court, Defendants must demonstrate that the court exceeded the measure of dis-

cretion the law affords it. This is done by showing that there is "no reasonable basis for the [court's] decision." *Crookston v. Fire Ins. Exch.*, 860 P.2d 937, 938 (Utah 1993).

¶ 8 In its cross-appeal, Utah County claims that in light of Defendants' refusal to remove the gate after receiving proper notice in 1997, Utah County is entitled to an award for statutory damages. *See* Utah Code Ann. § 72–7–104 (2001). We review a trial court's conclusions of law for correctness, granting no deference to the trial court. *See State v. Pena*, 869 P.2d 932, 936 (Utah 1994).

## ANALYSIS

### I. PUBLIC ROAD

¶ 9 For a road to be dedicated to public use, it must be "continuously used as a public thoroughfare for a period of ten years." Utah Code Ann. § 72–5–104; *see also Simpson*, 942 P.2d at 310. Defendants claim that (a) the use relied upon by the trial court was not public use, and that (b) the use was not continuous (c) for a period of ten years.

### a. Public Use

¶ 10 Defendants argue that because most of Plaintiffs' witnesses used the Road as trespassers, the witnesses should not be considered members of the public for purposes of determining that the Road was dedicated to public use. *See* Utah Code Ann. § 72–5–104(1). Defendants, however, provide no legal support for their argument, nor a compelling reason why trespassers cannot be considered members of the public.

¶ 11 In fact, "under Utah law ... permissive use cannot result in either adverse possession or dedication of private property to the public." *Campbell v. Box Elder County*, 962 P.2d 806, 809 (Utah Ct. App.1998); *see also State v. Six Mile Ranch Co.*, 2006 UT App 104, ¶ 19, 132 P.3d 687 (holding that permissive use may not be considered in a public dedication determination). Under the Dedication Statute, public use cannot include permissive use, nor can it include use by "owners of adjoining property." *Draper City v. Estate of Bernardo*, 888 P.2d 1097, 1099 (Utah 1995). Defendants'

proposed interpretation would render the Dedication Statute ineffective because no use could ever constitute public use. To give the Dedication Statute proper effect, we hold that non-permissive use must be considered public use. We therefore agree with the trial court that trespassers are members of the "public" for purposes of determining whether the Dedication Statute has been satisfied. *See* Utah Code Ann. § 72–5–104(1) (2001).

### b. Continuous Use

¶ 12 Defendants claim that, even if the trial court properly defined public use, the trial court erred in concluding that the Road was used continuously because there were gates along the road and seasonal weather conditions made the Road impassable at times.

¶ 13 While there was conflicting testimony at trial regarding the status and purpose of these gates, we are not in a position to closely scrutinize the factual findings of the trial court in public thoroughfare dedication cases. *See Heber City Corp. v. Simpson*, 942 P.2d 307, 309–10 (Utah 1997) (holding that factual issues in public dedication cases do not lend themselves to close review). Therefore, unless the findings of fact are clearly unsupported by the record, we will seek only to apply the trial court's factual findings to the law of abandonment and public dedication.

¶ 14 This court has interpreted the Dedication Statute as requiring "continuous and uninterrupted use of a road over ten years where 'the public, even though not consisting of a great many persons, made a continuous and uninterrupted use ... *as often as they found it convenient or necessary.*'" *Campbell*, 962 P.2d at 809 (emphasis added) (omission in original) (citation omitted). "[U]se may be continuous though not constant.... [P]rovided it occurred as often as the claimant had occasion or chose to pass. *Mere intermission is not interruption.*" *Id.* (omission in original) (emphasis added) (quotations and citation omitted).

¶ 15 Even though it appears that there were instances when seasonal weather rendered the Road temporarily impassable, the trial court found that the Road was used by

the public whenever it was convenient or necessary. Additionally, the court held that the gates in question were generally unlocked from about 1925 until 1980 and were used merely to restrict the travel of livestock, not people. These times of impasse amount to "mere intermission[s]" of public use. *Id.* We therefore agree with the trial court's conclusion that the Road was in continuous use by the public for an extended period of time.

### c. Period of Ten Years

¶ 16 Defendants argue that the trial court erred because it failed to identify an exact ten-year period during which the Road was continuously used. Language in the Dedication Statute requires a finding of continuous use for at least ten years, and therefore permits a finding of public dedication based on a time period greater than ten years. *See* Utah Code Ann. § 72–5–104(1) (2001). The trial court determined that the Road was continuously used by the public from about 1925 until 1980, or approximately fifty-five years. This fifty-five year span of public use clearly exceeds the statutory minimum requirement of ten years.

¶ 17 Defendants' arguments on this issue imply a challenge to the trial court's factual findings that the Road was continuously open to the public for a sufficient period of time. By failing to offer case law supporting their position and merely pointing to conflicting evidence in the record concerning the time period issue, Defendants simply invite this court to meddle with the trial court's findings of fact. Again, we will not closely scrutinize the factual findings of a trial court when reviewing public dedication cases; we seek only to ensure that the trial court has properly applied those facts to the law. *See Simpson,* 942 P.2d at 309–10. Therefore, we agree with the trial court that Plaintiffs properly demonstrated that the Road was continuously used by the public for at least ten years. *See* Utah Code Ann. § 72–5–104(1).

## II.  OBJECTIONS TO PROPOSED ORDER

¶ 18 After the trial court's decision, Defendants filed objections to the proposed findings of fact, conclusions of law, and order, with a request for a hearing, arguing insufficiency of the evidence. Despite Defendants' objections, the trial court entered the proposed findings and order without another hearing. Defendants argue that in ruling on their objections without holding a hearing, the trial court abused its discretion. We disagree.

¶ 19 The trial court is afforded great latitude in determining whether a hearing will be held on non-dispositive motions. *See* Utah R. Civ. P. 7(e). Under rule 7(e) of the Utah Rules of Civil Procedure, the trial court "may hold a hearing on any motion" but is not required to do so. *Id.* The proposed order eventually adopted by the trial court was sufficiently similar to the memorandum decision to provide a reasonable basis on which the trial court could decide to deny a hearing on the objections. Because Defendant's motion was simply an objection to the factual findings of the trial court, the court did not abuse its discretion by refusing to hold a hearing on Defendants' objection. *See Crookston v. Fire Ins. Exch.,* 860 P.2d 937, 938 (Utah 1993).

## III.  DAMAGES

¶ 20 In its cross-appeal, Utah County challenges the trial court's ruling that it is not entitled to statutory damages for the time the metal gate remained across the Road after Utah County served Defendants notice. Utah County argues that Defendants' failure to remove the gate after receiving proper service of notice automatically results in the statutory penalty. Under section 72–7–104, when an installation is not removed within ten days after service of notice is completed, "[a] highway authority may recover: (a) the costs and expenses incurred in removing the installation, serving notice, and the costs of a lawsuit if any; and (b) [ten dollars] for each day the installation remain[s] within the right-of-way after notice was complete." Utah Code Ann. § 72–7–104(4) (2001). More than nine years have passed since Defendants received service of notice, and the gate has apparently not been removed.

¶ 21 Utah County argues that it met its burden to show that service was completed and that the gate remained in place throughout this litigation. Utah County claims that the trial court did not have discretion to deny statutory damages. We agree. Pursuant to section 72–7–104(5), when the highway authority is granted a judgment after the removal of an installation is contested, it is entitled to the remedies referred to above. *See id.* § 72–7–104(5). It is clear from the record that Defendants did not remove the gate subsequent to receiving notice from Utah County. The record reflects that the trial court was reticent to award Utah County these costly damages. In declining to award damages, the trial court pointed to conflicting testimony regarding whether the gate was locked, despite finding that the Road was indeed a public highway, that notice to remove the gate was properly served, and that the gate was not removed.

¶ 22 We conclude that the installation of the gate clearly falls under the proscribed structures "of any kind or character" regardless of whether it was locked. *Id.* § 72–7–104(1). The record shows that the trial court gave much consideration to whether the gate remained locked after Defendants received notice. Such a factual determination is inapplicable to section 72–7–104(4), which concerns itself only with installations across public highways, not whether the installations are locked. *See id.* § 72–7–104(4). Because Utah County made a proper showing that the gate remained in place after notice was completed, the trial court should have awarded section 72–7–104(4) damages.

¶ 23 We recognize that this decision will, in effect, award Utah County substantial statutory damages despite its failure to take advantage of the self-help remedies available to it under section 72–7–104(1). *See id.* § 72–7–104(1). We also recognize that this decision will force landowners to think twice about deciding whether to remove similar installations after receiving notice from a highway authority—even when the landowner intends to challenge the highway authority's decisions in court. The ten dollar per day penalty begins to accrue ten days after notice is completed, and continues to accrue until the installation is removed. The statute simply does not provide for a tolling of the penalty during a legal dispute between a landowner and a highway authority, nor does it limit the total amount a highway authority may recover. We are therefore constrained to reward the highway authority's decision to not remove the installation and conclude that damages should be calculated from ten days after completion of service of notice until such time as the gate is removed. Surely the legislature did not anticipate such a long gap between the completion of service of notice and removal of the installation. But the plain language of the statute prevents us from interpreting the provision for statutory damages otherwise. *See id.* § 72–7–104(1)–(5).

## CONCLUSION

¶ 24 The trial court properly applied its factual conclusions to the law of abandonment and public dedication of a highway in finding that the Road is a public highway. The challenges by Defendants are largely an attack on the trial court's factual findings, which in public dedication cases, we will not closely scrutinize. However, the trial court erred by failing to award statutory damages after concluding that the gate remained across the Road well after Utah County completed service of notice. We therefore affirm the trial court's conclusion that the Road is a public highway under Utah Code section 72–5–104(1), and remand the case for a calculation of statutory damages consistent with this opinion and Utah Code section 72–7–104.

¶ 25 WE CONCUR: CAROLYN B. McHUGH and WILLIAM A. THORNE JR., Judges.