2008 UT 12

**UTAH COUNTY and State of Utah, by and through its Department of Natural Resources and Division of Wildlife Resources, Plaintiffs and Respondents,**

v.

**Randy BUTLER, Donna Butler, Blaine Evans, Linda Evans, Margaret Condley, Elizabeth Condley, and John Does 1–15, Defendants and Petitioners.**

No. 20070009.

Supreme Court of Utah.

Feb. 12, 2008.

M. Cort Griffin, Robert J. Moore, Provo, for plaintiff Utah County.

Mark L. Shurtleff, Att'y Gen., Martin B. Bushman, Asst. Att'y Gen., Salt Lake City, for plaintiff State of Utah.

Scott L. Wiggins, Salt Lake City, for defendants.

DURRANT, Justice:

## INTRODUCTION

¶ 1 In this and two companion cases that we also decide today,[1] we consider the opera-

tion and application of Utah Code section 72–5–104(1) (the "Dedication Statute"). The Dedication Statute provides that "[a] highway is dedicated and abandoned to the use of the public when it has been continuously used as a public thoroughfare for a period of ten years."[2] We granted certiorari in this case to review three issues related to the Dedication Statute: (1) whether the court of appeals erred in evaluating the trial court's determination that the public had continuously used the road at issue in this case according to the requirements of the Dedication Statute; (2) whether trespassing may constitute a public use pursuant to the Dedication Statute; and (3) whether the court of appeals erred in reviewing the trial court's failure to designate a specific ten-year period of continuous use and, if so, whether that failure constituted reversible error. We affirm the decision of the court of appeals, which, like the trial court, found the road at issue to be dedicated and abandoned as a public highway.[3]

¶ 2 We also granted certiorari to determine whether the court of appeals erred in its application of Utah Code section 72–7–104(4) to the facts of this case. As to this issue, we reverse the decision of the court of appeals.

## BACKGROUND

¶ 3 Bennie Creek Road (the "Road") begins in Birdseye, Utah, at a junction with U.S. Highway 89 and proceeds approximately two and one-half miles west until it reaches the edge of the Uinta National Forest. The Road continues into the forest, providing access to hiking trails, camping areas, and the Nebo Loop Road. Before entering the forest, the Road crosses real property owned by Randy Butler, Donna Butler, Blaine Evans, and Linda Evans (collectively, the "Butlers").

¶ 4 In 1996, Mr. Butler erected a locked gate across the Road. The following year, Utah County served Mr. Butler with notices instructing him to remove the gate. Mr.

---

1.  *Town of Leeds v. Prisbrey*, 2008 UT 11, 179 P.3d 737; *Wasatch County v. Okelberry*, 2008 UT 10, 179 P.3d 768.

2.  Utah Code Ann. § 72–5–104(1) (2001).

3.  *Utah County v. Butler*, 2006 UT App 444, ¶ 24, 147 P.3d 963.

Butler did not remove the gate and Utah County thereafter filed this action to have the Road declared dedicated and abandoned to public use pursuant to Utah Code section 72–5–104(1).[4] Utah County also sought an order enjoining the Butlers from blocking access to the Road and forcing them to remove the gate and requested monetary relief from the Butlers of ten dollars a day for each day the Road remained closed following delivery of the notices pursuant to Utah Code section 72–7–104(4).

¶ 5 During an eight-day bench trial, the trial court heard testimony from over sixty witnesses—including previous and current owners of the relevant property, various recreational users of the Road, Utah Division of Wildlife Resources employees, Uinta National Forest workers, and county employees assigned to maintain the Road—regarding the use and condition of the Road from 1925 to the present time. These witnesses provided conflicting testimony as to the presence and purpose of gates on the Road, the placement of "No Trespassing" signs, and the necessity of obtaining permission of a landowner to use the Road.

¶ 6 In its Findings of Fact, the trial court cited the conflicting testimony regarding locked gates. The gates, the court found, were used for controlling livestock "and not intended to restrict travel on the Road." The court also found that the signs and painted posts along the Road were positioned such that "they prohibited travel off of the Road, not on the Road." And with respect to other evidence that travel on the Road was restricted, the court found that winter snow impeded all travel on the Road, and that springs or bogs, which flooded the Road in wet years, impeded travel by vehicle but not by foot, horseback, or wagon. The court also found that, although there was testimony that the Road was at times impassable because it was used to deliver irrigation water,

"[a] clear and convincing majority of witnesses ... traveled the Road unrestricted by irrigation practices." Based on these findings, the trial court concluded that the Road "has been dedicated and abandoned to the use of the public because it has been continuously used as a public thoroughfare for a period of ten years" and ordered the Butlers to remove "anything that blocks, locks, or otherwise interferes with public access across the Road."

¶ 7 Although the trial court otherwise found in favor of Utah County, the court denied Utah County's request for damages. The court explained in its Memorandum Decision that "for some of the time since construction of the metal Butler gate the [R]oad has been obstructed and for some of the time it has not." Because the county did not present evidence "to clarify how many of the intervening 2,561 days were days when the [R]oad was obstructed and how many were not," the court chose not to impose a monetary penalty on the Butlers.

¶ 8 The Butlers appealed the court's decision regarding the public dedication of the Road, and Utah County cross-appealed the court's failure to award damages. The court of appeals affirmed the trial court's conclusion that the Road has been dedicated and abandoned to public use but reversed its damages determination.[5] We granted certiorari on three issues relating to the court of appeals' application of the Dedication Statute and one issue regarding the award of damages.

### STANDARDS OF REVIEW

¶ 9 "On certiorari, we review for correctness the decision of the court of appeals, not the decision of the district court."[6] "The correctness of the court of appeals' decision turns on whether that court correct-

---

4.  An earlier version of this statute was in effect at the time Utah County claims the Road was dedicated and abandoned to the use of the public. *See* Utah Code Ann. § 27–12–89 (1995). A 1998 amendment to the earlier version renumbered this section but made no substantive changes to it. 1998 Utah Laws 861. We therefore refer to the current version of the statute throughout this opinion.

5.  *Utah County v. Butler*, 2006 UT App 444, 147 P.3d 963.

6.  *D.J. Inv. Group, L.L.C. v. DAE/Westbrook, L.L.C.*, 2006 UT 62, ¶ 10, 147 P.3d 414.

ly reviewed the trial court's decision under the appropriate standard of review."[7] As to the Dedication Statute, "[a]n appellate court reviews a trial court's legal interpretation of the Dedication Statute for correctness and its factual findings for clear error."[8] But whether the facts of a case satisfy the requirements of the Dedication Statute is a mixed question of fact and law that involves various and complex facts, evidentiary resolutions, and credibility determinations.[9] An appellate court therefore reviews "a trial court's decision regarding whether a public highway has been established under [the Dedication Statute] ... for correctness but grant[s] the court significant discretion in its application of the facts to the statute."[10] The question of whether the court of appeals properly awarded damages under Utah Code section 72–7–104(4) is an issue of statutory interpretation, a question of law that we review for correctness.[11]

## ANALYSIS

¶ 10 We granted certiorari to review three issues concerning the Dedication Statute, which reads as follows: "A highway is dedicated and abandoned to the use of the public when it has been continuously used as a public thoroughfare for a period of ten years."[12] The three issues relate to each of the three elements of this statute—"continuous use," "a public thoroughfare," and "a period of ten years"—which we review, in that order, below. Following our review of the elements of the Dedication Statute, we address the final issue on which we granted certiorari, which concerns the damages to which a party claiming dedication is entitled under Utah Code section 72–7–104(4).

## I. CONTINUOUS USE

¶ 11 We first consider the court of appeals' affirmation of the trial court's finding that the Road was *continuously used* as a public thoroughfare. The Butlers argue that the trial court failed to consider a variety of circumstances that interrupted the public's continuous use of the road. We require parties challenging factual findings of a lower court to "first marshal all the evidence in support of the finding and then demonstrate that the evidence is legally insufficient to support the finding even when viewing it in a light most favorable to the court below."[13] To accomplish this, a party "may not simply cite to the evidence which supports his or her position and hope to prevail."[14] Rather, a party should "construct the evidence supporting the adversary's position, and then 'ferret out a fatal flaw in the evidence.'"[15] "[P]arties that fail to marshal the evidence do so at the risk that the reviewing court will decline ... to review the trial court's factual findings."[16] Nevertheless, we "retain[ ] discretion to consider independently the whole record and determine if the decision below has adequate factual support."[17]

¶ 12 In this case, the Butlers completely failed to marshal the evidence in support of the trial court's conclusion that the Road was continuously used as a public thoroughfare. In their brief, the Butlers simply asserted that "[t]here is no evidence to marshal in support of the district court's finding." This assertion is patently false, as there is abundant evidence in the record

7. *State v. Dean*, 2004 UT 63, ¶ 7, 95 P.3d 276.

8. *Wasatch County v. Okelberry*, 2008 UT 10, ¶ 8, 179 P.3d 768.

9. *Heber City Corp. v. Simpson*, 942 P.2d 307, 309–10 (Utah 1997).

10. *Id.* at 310.

11. *See Sill v. Hart*, 2007 UT 45, ¶ 5, 162 P.3d 1099.

12. Utah Code Ann. § 72–5–104(1) (2001).

13. *Wilson Supply, Inc. v. Fradan Mfg. Corp.*, 2002 UT 94, ¶ 21, 54 P.3d 1177.

14. *Wayment v. Howard*, 2006 UT 56, ¶ 9, 144 P.3d 1147.

15. *Martinez v. Media–Paymaster Plus/Church of Jesus Christ of Latter-Day Saints*, 2007 UT 42, ¶ 17, 164 P.3d 384 (quoting *West Valley City v. Majestic Inv. Co.*, 818 P.2d 1311, 1315 (Utah App. 1991)).

16. *Id.* ¶ 19.

17. *Id.* ¶ 20.

supporting the trial court's finding. Moreover, the trial court repeatedly referenced such evidence in its written decision. Because the Butlers' failure to marshal is particularly egregious, we would ordinarily decline to review the factual findings of the lower court under these circumstances. But because we decide this case in tandem with two companion cases that also involve the Dedication Statute,[18] one of which sets forth the standard for ascertaining whether a road has been "continuously used," [19] we choose to exercise our discretion and review the merits of the Butlers' arguments regarding continuous use in order to elucidate this standard by applying it to specific facts.

¶ 13 The Butlers argue that the Road was not continuously used as a public thoroughfare because travel on the Road was interrupted by naturally occurring weather conditions, irrigation water, and locked gates. Additionally, the Butlers argue that use of the Road was not continuous because there were "No Trespassing" signs along the Road and the landowners, on occasion, called the county sheriff to have trespassers removed from their property. As we explain below, none of these occurrences amounted to an interruption in the public's continuous use of the Road for purposes of the Dedication Statute.

¶ 14 A road is continuously used as a public thoroughfare when "the public . . . [makes] a continuous and uninterrupted use" of the road "as often as they [find] it convenient or necessary." [20] This " 'use may be continuous though not constant[ ] . . . provided it [occurs] as often as the claimant [has] occasion or [chooses] to pass. [ . . . ] Mere intermission is not interruption.' " [21] In a companion case that we decide today, we hold that "[a]n overt act that is intended by a property owner to interrupt the use of a road as a public thoroughfare, and is reasonably calculated to do so, constitutes an interruption sufficient to restart the running of the required ten-year period under the Dedication Statute." [22] Credible evidence of such an interruption precludes a finding of continuous use.[23]

¶ 15 As to the Road, groundwater that flooded the Road in the spring and snow that covered the Road in the winter did not interrupt the Road's continuous use for purposes of the Dedication Statute. These conditions, natural in origin, were not overt acts undertaken by the Road's owner.

¶ 16 Irrigation water that flooded the Road and gates along the Road, even though the result of overt acts, also did not interrupt continuous use of the Road for purposes of the Dedication Statute. The Road was periodically used to deliver irrigation water to property along the Road, but the record includes no evidence that the Road was flooded by the Road owner with the intent to interrupt the Road's continuous use as a public thoroughfare rather than to simply deliver irrigation water. Thus, because the overt acts undertaken to effect irrigation were not undertaken with the requisite intent of interrupting continuous use, they do not constitute an interruption sufficient to restart the running of the Dedication Statute's ten-year period. Similarly, the trial court found that gates along the Road were erected, and occasionally locked, for the purpose of controlling livestock. It explicitly found that the gates were not meant to restrict public travel on the Road. Although gates can, under appropriate circumstances, constitute an interruption for purposes of the Dedication Statute,[24] the gates on the Road

18. *Town of Leeds v. Prisbrey*, 2008 UT 11, 179 P.3d 737; *Wasatch County v. Okelberry*, 2008 UT 10, 179 P.3d 768.

19. *See Wasatch County*, 2008 UT 10, ¶ 15, 179 P.3d 768.

20. *Boyer v. Clark*, 7 Utah 2d 395, 326 P.2d 107, 109 (1958).

21. *Campbell v. Box Elder County*, 962 P.2d 806, 809 (Utah Ct.App.1998) (emphasis omitted) (quoting *Richards v. Pines Ranch, Inc.*, 559 P.2d 948, 949 (Utah 1977)).

22. *Wasatch County*, 2008 UT 10, ¶ 15, 179 P.3d 768.

23. *Id.*

24. *See id.* ¶ 19 ("The locking of gates for several days at a time constitutes an overt act intended to interrupt public use and reasonably calculated to do so.").

were not erected or locked with the requisite intent and therefore did not interrupt the public's continuous use of the Road.

¶ 17 The Butlers' arguments that removing trespassers from and posting "No Trespassing" signs alongside the Road interrupted the Road's continuous use as a public thoroughfare are likewise without merit. The only evidence regarding the removal of trespassers relevant to the time period during which the trial court found the Road to have been continuously used was the testimony of one witness who was "hunting well off the Road" at the time he was asked to leave. Because this individual was not removed from the Road itself, the action of the property owner does not constitute an overt act intended and reasonably calculated to interrupt continuous use of the *Road* as a public thoroughfare. Likewise, the trial court found that "No Trespassing" signs prohibited travel off of the Road, but not on the Road. Signs posted against travel on property adjacent to the Road do not constitute an interruption of travel on the Road itself. Thus, because none of the actions cited by the Butlers amount to an overt act intended and reasonably calculated to interrupt the use of the Road as a public thoroughfare, we affirm the court of appeals' conclusion that the trial court did not err in determining that the Road was continuously used as a public thoroughfare for purposes of the Dedication Statute.[25]

## II. PUBLIC THOROUGHFARE

¶ 18 We next consider whether trespassing may constitute a "public" use pursuant to the Dedication Statute. The Butlers argue that some trespassers should not be considered members of the public for purposes of determining whether a road was continuously used as a public thoroughfare. Specifically, they contend that trespassers who knowingly use a private road without permission—in other words, criminal trespassers[26]—are not members of the public for purposes of the Dedication Statute. They contend that only persons who use a road without knowledge of its private status—individuals they call "good faith" trespassers—are members of the public capable of continuously using a road as a public thoroughfare. The court of appeals rejected the Butlers' arguments and "agree[d] with the trial court that trespassers are members of the 'public' for purposes of determining whether the Dedication Statute has been satisfied."[27]

¶ 19 We have explained that certain persons are not members of the public for purposes of the Dedication Statute. Individuals with a private right to use a road, such as adjoining property owners who "may have documentary or prescriptive rights to use the road," are not members of the public, nor are those who have been given permission to use a road.[28] But other than these two classes of individuals, we have not otherwise defined who constitutes the public for purposes of the Dedication Statute. To determine whether trespassers constitute members of the public for purposes of the statute, we must ascertain the intent of the legislature.[29] This we do by evaluating "the 'best evidence' of legislative intent, namely, 'the plain language of the statute itself.'"[30]

---

**25.** *See Utah County v. Butler*, 2006 UT App 444, ¶ 15, 147 P.3d 963.

**26.** Utah Code section 76–6–206 defines criminal trespass. The relevant subsection reads as follows:

(2) A person is guilty of criminal trespass if
. . .
. . .
(b) knowing his entry or presence is unlawful, he enters or remains on property as to which notice against entering is given by:
(i) personal communication to the actor by the owner or someone with apparent authority to act for the owner;
(ii) fencing or other enclosure obviously designed to exclude intruders; or

(iii) posting of signs reasonably likely to come to the attention of intruders. . . .
Utah Code Ann. § 76–6–206(2) (2003 & Supp. 2007).

**27.** *Utah County v. Butler*, 2006 UT App 444, ¶ 11, 147 P.3d 963.

**28.** *Draper City v. Estate of Bernardo*, 888 P.2d 1097, 1099 (Utah 1995).

**29.** *See Duke v. Graham*, 2007 UT 31, ¶ 16, 158 P.3d 540.

**30.** *Id.* (quoting *State v. Martinez*, 2002 UT 80, ¶ 8, 52 P.3d 1276).

¶ 20 Here, the Dedication Statute does not reference or imply the character of the use required of the user, only that users be members of the "public." The "public" is commonly understood to be "the people as a whole."[31] The plain language of the statute does not exclude trespassers, including criminal trespassers, from the class of persons who constitute the "public." All trespassers are therefore "public" users capable of continuously using a road for purposes of dedication. We affirm the court of appeals' conclusion in this regard.[32]

¶ 21 Although we conclude that trespassers can establish a public highway, we stress that a road owner can preclude a finding of continuous use established by trespassers by providing credible evidence of an overt act intended and reasonably calculated to interrupt the use of the road as a public thoroughfare. For example, if a road owner erects and locks for several days at a time a gate across a road for the purpose of blocking public use, this act will restart the ten-year period and preclude a finding of continuous use even if someone jumps the gate or removes the lock and criminally trespasses on the road. Proper action by a road owner can interrupt continuous use by the public regardless of whether the persons using the road are criminal or "good faith" trespassers.

## III. PERIOD OF TEN YEARS

¶ 22 With respect to the third element of the Dedication Statute, the ten-year period, the Butlers argue that the trial court failed to identify a ten-year period of time in which the Road was continuously used as a public thoroughfare. They suggest that the trial court's finding that the Road was continuously used as a public thoroughfare from approximately 1925 to 1980—a period of fifty-five years—is legally inadequate because

the court failed to "specifically pinpoint" one ten-year period during those years.

¶ 23 We have explained that, under the Dedication Statute, "[c]ontinuous use as a public thoroughfare must occur for *at least* ten years."[33] The court of appeals concluded that this "permits a finding of public dedication based on a time period greater than ten years."[34] We agree. Here, the trial court's finding of fifty-five years of continuous use is more than adequate to support its determination that the Road was abandoned and dedicated to the public under the Dedication Statute. Thus, the court of appeals correctly affirmed the trial court's finding that the Road was continuously used as a public thoroughfare for a period of ten years.

## IV. DAMAGES

¶ 24 Finally, we consider whether the court of appeals erred in its application of Utah Code section 72–7–104(4) to the facts of this case. Subsection (1) of this code section provides that "the highway authority having jurisdiction over the right-of-way may" remove from the right-of-way of any highway any structure installed by any person or "give written notice to the person … to remove the installation from the right-of-way."[35] And under subsection (3), if the highway authority gives notice and "the installation is not removed within ten days after the notice is complete, the highway authority may remove the installation at the expense of the person."[36] Subsection (4), which is the focus of our review, provides that the "highway authority may recover: (a) the costs and expenses incurred in removing the installation, serving notice, and the costs of a lawsuit, if any; and (b) $10 for each day the installation remained within the right-of-way after notice was complete."[37]

¶ 25 In this case, Utah County served the Butlers with notice that the gate erected

**31.** *Merriam–Webster's Collegiate Dictionary* 1005 (11th ed.2003).

**32.** *See Utah County,* 2006 UT App 444, ¶ 11, 147 P.3d 963.

**33.** *Heber City Corp. v. Simpson,* 942 P.2d 307, 312 (Utah 1997) (emphasis added).

**34.** *Utah County v. Butler,* 2006 UT App 444, ¶ 16, 147 P.3d 963.

**35.** Utah Code Ann. § 72–7–104(1) (2001).

**36.** *Id.* § 72–7–104(3).

**37.** *Id.* § 72–7–104(4).

across the Road by Mr. Butler should be removed, but the Butlers did not remove the gate. As a result, Utah County asked the trial court for statutory damages of ten dollars for each day the gate remained across the Road. The court denied Utah County's request, citing two considerations. First, the court noted that Utah County created and placed a sign on the gate indicating that travel was allowed past the gate, but admonishing travelers to close the gate and stay on the Road until they reach the national forest. The court explained that "there have historically been gates across the Road for purposes unrelated to obstruction of traffic. An unlocked gate is consistent with this pattern and would not be considered to violate the right-of-way" Utah County has to the Road. Second, the court stated that Utah County, "as the moving party in seeking to obtain the penalty, had the burden of proving specific evidence of the number of days the [Butlers] have been in violation." This, the court said, Utah County failed to do.

¶ 26 The court of appeals reversed the trial court, concluding that the trial court did not have discretion to deny statutory damages to Utah County.[38] According to the court of appeals, the highway authority is entitled to the remedies in section 72–7–104(4) if it is granted a judgment in an action contesting the removal of an installation on a right-of-way.[39] In addition, the court explained that the gate across the Road "clearly falls under the proscribed structures 'of any kind or character' regardless of whether it was locked." [40] Thus, the court of appeals suggested that the trial court's decision not to award damages was inappropriately based on

the lack of evidence regarding whether the gate was locked after the Butlers received notice from Utah County.[41] The court of appeals concluded that "[b]ecause Utah County made a proper showing that the gate remained in place after notice was completed, the trial court should have awarded section 72–7–104(4) damages." [42]

¶ 27 The Butlers argue that the word "may," as used throughout section 72–7–104, is a permissive term and gives the trial court discretion to award damages. In contrast, Utah County argues that the word allows the highway authority to elect its remedy, which must then be granted by the court. We believe the word "may" as used throughout section 72–7–104 goes to the highway authority's discretion with respect to the selection of a remedy. That is, the statute gives the highway authority permission, under subsection (1), to remove an installation or give notice to the offending person to remove it; under subsection (3), to remove the installation at the expense of the person if, after giving notice, the person fails to remove it; under subsection (4), to recover the costs of removing the installation, the costs of a lawsuit, and ten dollars a day; and, under subsection (5), to bring an action to abate the installation as a public nuisance if the person refuses to remove or permit its removal.[43] Importantly, however, the statute does not suggest that the highway authority's chosen remedy *must* be granted by a court. Had the Legislature wished to mandate the award of damages or any of the other remedies in this section, it could have used the word "shall." [44] In the absence of such explicit legislative intent, we deem the award of

**38.** *Utah County v. Butler*, 2006 UT App 444, ¶ 21, 147 P.3d 963.

**39.** *Id.* The court of appeals based this conclusion on section 72–7–104(5), which reads as follows:

(5) (a) If the person ... refuses to remove [the installation] ..., the highway authority may bring an action to abate the installation as a public nuisance.

(b) If the highway authority is granted a judgment, the highway authority may recover the costs of having the public nuisance abated as provided in Subsection (4).

**40.** *Utah County*, 2006 UT App 444, ¶ 22, 147 P.3d 963 (quoting Utah Code Ann. § 72–7–104(1)).

**41.** *Id.*

**42.** *Id.*

**43.** Utah Code Ann. § 72–7–104(1)–(5).

**44.** *See, e.g., Grant v. Utah State Land Bd.*, 26 Utah 2d 100, 485 P.2d 1035, 1036–37 (1971) ("[I]f the legislature had intended an applicant [for reinstatement of certain contracts of purchase of State land] to have an absolute right of reinstatement, instead of saying that an applicant '*may* have his contract reinstated,' it could easily have used the word 'shall' or 'must,' and thus have rendered a mandatory meaning clear.").

ten dollars a day in damages, if elected by the highway authority, to be in the court's discretion.[45]

¶ 28 In sum, the word "may" in section 72–7–104(4) does give Utah County permission to seek ten dollars a day in damages for every day the Butlers' gate remained in place on the Road or to seek an alternative remedy, but it does not mandate that the trial court award those damages if sought. Because the grounds upon which the trial court based its decision not to award damages—the sign placed on the gate by Utah County and the absence of evidence regarding when the gate was locked—are reasonable, the trial court did not abuse its discretion in declining to award Utah County damages under Utah Code section 72–7–104(4). We therefore reverse the court of appeals' determination in this regard and affirm the decision of the trial court.

## CONCLUSION

¶ 29 We uphold the court of appeals' affirmation of the trial court's conclusion that Bennie Creek Road was abandoned and dedicated to public use because all three elements of the Dedication Statute were satisfied. First, we affirm the trial court's finding that Utah County established by clear and convincing evidence that the Road was continuously used as a public thoroughfare. The Butlers introduced no credible evidence of an overt act or acts intended and reasonably calculated to interrupt use of the road as a public thoroughfare—the only interruption sufficient to restart the running of the Dedication Statute's ten-year period and preclude a finding of continuous use. Second, we hold that trespassers are public users capable of establishing continuous use under the Dedication Statute and thus were properly considered by the trial court in its application of the Dedication Statute. Third, we conclude that the trial court's finding of a fifty-five year period of continuous use as a public thoroughfare satisfied the Dedication Statute's requirement that

such use be made for a period of ten years. Finally, we reverse the court of appeals' conclusion that Utah County is entitled to monetary damages under Utah Code section 72–7–104(4) because the statute permits the election of such remedy by a highway authority, but does not mandate that the court award it. We conclude that the trial court did not abuse its discretion in electing not to award damages to Utah County under this statute. Affirmed in part and reversed in part.

¶ 30 Chief Justice DURHAM, Associate Chief Justice WILKINS, Justice PARRISH, and Justice NEHRING concur in Justice DURRANT's opinion.

---

45. *See State v. Wallace,* 2006 UT 86, ¶¶ 10–12, 150 P.3d 540 (interpreting the term "may" as permissive because the legislature replaced "shall" with "may" in the relevant statute and

explaining that "in the absence of any clear legislative indication to the contrary, we take the Legislature at its word").