2008 UT 10

**WASATCH COUNTY, a body politic of the State of Utah, Plaintiff and Respondent,**

v.

**E. Ray OKELBERRY, Brian Okelberry, Eric Okelberry, West Daniels Land Association, Utah Division of Wildlife Resources, and John Does 1–25, Defendants and Petitioners.**

No. 20070011.

Supreme Court of Utah.

Feb. 12, 2008.

Thomas L. Low, Scott H. Sweat, Heber City, for plaintiff.

Don R. Petersen, Leslie W. Slaugh, Provo, for defendants.

DURRANT, Justice:

## INTRODUCTION

¶1 In this case and two companion cases that we also decide today,[1] we consider the operation of Utah Code section 72–5–104(1) (the "Dedication Statute"), which provides as follows: "A highway is dedicated and abandoned to the use of the public when it has been continuously used as a public thoroughfare for a period of ten years."[2] We granted certiorari in this case to consider whether the court of appeals erred in its application of the standard for ascertaining continuous use as a public thoroughfare under this statute. We conclude that it did so err. We reverse and remand for the entry of specific findings of fact relevant to the standard we announce today and for an application of that standard.

## BACKGROUND

¶2 In 1957, Roy Okelberry and his sons, E. Ray and Lee, purchased a large tract of land (the "Property") in Wasatch County near Wallsburg, Utah. E. Ray and Lee later acquired their father's interest in the Property. Sometime thereafter, Lee sold his interest in the Property to E. Ray and E. Ray's sons, Brian and Eric. E. Ray, Brian, and Eric Okelberry (the "Okelberrys") currently own the Property and use it for their livestock operations.

¶3 Several unimproved mountain roads cross the Property, all of which begin and

---

1. *Town of Leeds v. Prisbrey,* 2008 UT 11, 179 P.3d 737; *Utah County v. Butler,* 2008 UT 12, 179 P.3d 775.

2. Utah Code Ann. § 72–5–104(1) (2001).

end (or connect with roads that begin and end) at points outside of it. Four of these roads are at issue in this case: Circle Springs Road, Thorton Hollow Road, Parker Canyon Road, and Ridge Line Road (collectively, the "Four Roads").[3] When Roy, E. Ray, and Lee Okelberry purchased the Property in 1957, fences on its east and south sides separated it from United States Forest Service property, and wire gates along these fences controlled access to the Four Roads, requiring persons entering or exiting the Property to open the gates before proceeding.

¶ 4 In 2001, Wasatch County filed a Complaint for Declaratory Judgment and Quiet Title against the Okelberrys, the Utah Division of Wildlife Resources,[4] and West Daniels Land Association,[5] seeking to have the Four Roads declared dedicated and abandoned to the use of the public pursuant to Utah Code section 72-5-104.[6] During a three-day bench trial, Wasatch County presented several witnesses who testified that they had used the Four Roads without the Okelberrys' permission for recreational purposes during the 1960s, 1970s, and 1980s. These witnesses also testified that although there were gates on the roads, their use of the roads was unrestricted. The Okelberrys presented evidence and testimony that members of the

public had not had unrestricted access to the roads, but that the gates on the roads had been locked, at least occasionally, as early as the late 1950s and that "No Trespassing," "Keep Out," or "Private" signs were posted. The Okelberrys testified that they had given permission to a large number of people in the community to use their roads and Property and had sold trespass and hunting permits. And witnesses testified that the Okelberrys, in the mid–1990s, placed their Property in a cooperative wildlife management unit for use as a private hunting unit. The Okelberrys and their employees testified that when they encountered persons on the Property or roads without express permission to be there, they asked them to leave.

¶ 5 At the conclusion of the bench trial, the trial court entered findings of fact and conclusions of law and, later, supplemental findings of fact. The trial court found "that there was no public use of the various roads in the 1940s or before and also that no evidence of vehicular use prior to the 1950s existed." The court recognized that there were gates on the roads that the Okelberrys or their employees locked "[a]t various times in the past," but found that they were locked "on a more permanent basis" beginning in the early 1990s. In addition, the court found

---

3. The underlying lawsuit also included Maple Canyon Road. The trial court found that this road had not been dedicated and abandoned to the public. Neither party appealed this decision, and we do not address it here.

4. Wasatch County settled its dispute with the Utah Division of Wildlife Resources in 2003.

5. Portions of Ridge Line Road and Parker Canyon Road traverse property owned by West Daniels Land Association (the "Association") immediately adjacent to the Property. The Okelberrys are members and shareholders in the Association and use the Association's land, together with their own, for grazing livestock. The Association initially made an appearance through counsel, but counsel later withdrew and no successor was appointed. Wasatch County thereafter sought default summary judgment against the Association. The Okelberrys opposed this motion, arguing that as members of the Association they had "a vested interest to see that no judgment is entered in this matter on behalf of the plaintiff" and that, at trial, they "will present evidence that there are no established roads across the property of [the] Association." For reasons that are unclear from the record, the trial court did not

enter a ruling on Wasatch County's default judgment motion prior to trial. In its posttrial Findings of Fact and Conclusions of Law, the court noted that the Association's "default was entered," but that the Okelberrys had been allowed to submit "[e]vidence regarding the use of those portions of the roads at issue which are located in [the] Association's property" at trial. The trial court made its determinations regarding the Four Roads without distinguishing between the Okelberrys' property and the Association's property. We likewise do not distinguish between the properties and refer only to the interests of the Okelberrys because the parties have not appealed this issue.

6. An earlier version of this statute was in effect at the time Wasatch County claims the Four Roads were dedicated and abandoned to the use of the public. See Utah Code Ann. § 27–12–89 (1995). A 1998 amendment to the earlier version renumbered this section but made no substantive changes to it. 1998 Utah Laws 861. We therefore refer to the current version of the statute throughout this opinion.

that "[p]rior to the gates being locked, the existence of the gates did not interrupt the public's use of the roads."

¶ 6 In its Conclusions of Law, the trial court stated as follows:

Taking even the [Okelberrys'] factual assertions as true, it is clear that individuals using the roads beginning in the late 1950s until the late 1980s or early 1990s used the roads without interruption, they used the roads freely, and though not constantly, they used the roads continuously as they needed. Therefore, [the] Court finds that prior to the interrupting mechanisms being put in place the roads in question were subject to continuous use. . . .

The trial court also found that the majority of those using the roads were nonpermissive users and members of the general public. Thus, the court determined that "[p]rior to the locking of the gates in the early 1990s the roads were used as public thoroughfares." And the court found "that the continuous use as a public thoroughfare continued for at least ten years, if not much longer, or for multiple periods of ten years." The court therefore concluded that Wasatch County had established by clear and convincing evidence that the Four Roads had been abandoned and dedicated to the public. The court decided, however, that Wasatch County was equitably estopped from opening the roads to public use because the Okelberrys had, since 1989, asserted private control over the roads. The court stated that "[t]o allow the County now to assert an ownership interest in these roads would cause the Okelberrys injury [and] would be unjust."

¶ 7 Wasatch County appealed the trial court's equitable estoppel determination, and the Okelberrys cross-appealed the court's decision that the Four Roads had been dedicated to the public. The court of appeals reversed the trial court's equitable estoppel decision and upheld its decisions regarding the public dedication of the Four Roads.[7] We granted certiorari to determine whether the court of appeals applied the correct standard for determining whether a road has been continuously used as a public thoroughfare pursuant to Utah Code section 72–5–104. The parties do not challenge, and we do not address, the equitable estoppel issue.

## STANDARD OF REVIEW

¶ 8 "On certiorari, we review for correctness the decision of the court of appeals, not the decision of the district court."[8] "The correctness of the court of appeals' decision turns on whether that court correctly reviewed the trial court's decision under the appropriate standard of review."[9] An appellate court reviews a trial court's legal interpretation of the Dedication Statute for correctness and its factual findings for clear error.[10] But whether the facts of a case satisfy the requirements of the Dedication Statute is a mixed question of fact and law that involves various and complex facts, evidentiary resolutions, and credibility determinations.[11] Thus, an appellate court reviews "a trial court's decision regarding whether a public highway has been established under [the Dedication Statute] . . . for correctness but grant[s] the court significant discretion in its application of the facts to the statute."[12]

## ANALYSIS

¶ 9 Both the United States and Utah Constitutions prohibit uncompensated takings of private property.[13] Yet, under certain circumstances, Utah statutory law allows property to be transferred from private to public use without compensation. The Dedication Statute at issue in this case allows

7. See Wasatch County v. Okelberry, 2006 UT App 473, ¶ 33, 153 P.3d 745.

8. D.J. Inv. Group, L.L.C. v. DAE/Westbrook, L.L.C., 2006 UT 62, ¶ 10, 147 P.3d 414.

9. State v. Dean, 2004 UT 63, ¶ 7, 95 P.3d 276.

10. See State v. Levin, 2006 UT 50, ¶ 20, 144 P.3d 1096.

11. Heber City Corp. v. Simpson, 942 P.2d 307, 309–10 (Utah 1997).

12. Id. at 310.

13. U.S. Const. amend. V ("[N]or shall private property be taken for public use, without just compensation."); Utah Const. art. I, § 22 ("Private property shall not be taken or damaged for public use without just compensation.").

for such a transfer. The statute provides that "[a] highway is dedicated and abandoned to the use of the public when it has been continuously used as a public thoroughfare for a period of ten years." [14] In light of the constitutional protection accorded private property, we have held that a party seeking to establish dedication and abandonment under this statute bears the burden of doing so by clear and convincing evidence.[15]

¶ 10 In a number of our past cases, we have sought to interpret the phrase "continuously used as a public thoroughfare." We have explained that such use occurs when "the public, even though not consisting of a great many persons, [makes] a continuous and uninterrupted use" of a road "as often as they [find] it convenient or necessary." [16] The court of appeals, borrowing language from one of our cases dealing with the doctrine of right-of-way by prescription, has added to this definition as follows: " '[U]se may be continuous though not constant[ ] ... provided it occurred as often as the claimant had occasion or chose to pass. [ ... ] Mere intermission is not interruption.' " [17]

¶ 11 Despite the best efforts of this court and the court of appeals, a workable interpretation of "continuous use" in the context of the Dedication Statute has remained elusive. We have described ourselves as "hard-pressed to establish a coherent and consistent statement of the law on a fact-intensive, case-by-case review of trial court rulings." [18] In reviewing the case now before us, the court of appeals thoughtfully sought to bring some coherency and consistency to this area of the law by articulating a balancing test:

> In deciding whether a locked gate acted as an interruptive force sufficient to restart the running of the statutory ten-year period, the trial court should weigh the evidence regarding the duration and frequency that the gate was locked against the frequency and volume of public use to determine if there is clear and convincing evidence that public use of the road was continuous.[19]

¶ 12 We find the court of appeals' approach problematic. The proposed test could be read to suggest that the elements of the Dedication Statute are met where the duration and frequency of continuous use as a public thoroughfare simply outweigh the duration and frequency of interruption during a ten-year period. Under this standard, it could be argued that even where there is a significant interruption in the use of a road, if the period of use is greater than the length of the interruption, the requirements of the Dedication Statute would be satisfied. We think it unlikely that this is what the Legislature intended when it required that a road be "continuously used." Indeed, to balance interruptions in use against frequency of use in order to determine whether a road was continuously used is inconsistent with the very notion of continuous use—*any* sufficient interruption in use necessarily makes use noncontinuous. Moreover, we think that this balancing test fails to remedy the lack of

14. Utah Code Ann. § 72–5–104(1) (2001).

15. *See Draper City v. Estate of Bernardo*, 888 P.2d 1097, 1099 (Utah 1995); *Bonner v. Sudbury*, 18 Utah 2d 140, 417 P.2d 646, 648 (1966).

16. *Boyer v. Clark*, 7 Utah 2d 395, 326 P.2d 107, 109 (1958).

17. *Campbell v. Box Elder County*, 962 P.2d 806, 809 (Utah Ct.App.1998) (quoting *Richards v. Pines Ranch, Inc.*, 559 P.2d 948, 949 (Utah 1977)). The entire passage from which this quote was extracted reads as follows:

> "A way may be established by prescription without direct evidence of its actual use during each year. A use may be continuous though not constant. A right of way means a right to pass over another's land, more or less frequently, according to the nature of the use to

> be made by the easement; and how frequently is immaterial, provided it occurred as often as the claimant had occasion or chose to pass. It must appear not to have been interrupted by the owner of the land across which the right is exercised, nor voluntarily abandoned by the claimant. Mere intermission is not interruption."

*Richards*, 559 P.2d at 949 (quoting 1 *Thompson on Real Property* § 464 (1924)).

18. *Heber City Corp. v. Simpson*, 942 P.2d 307, 310 (Utah 1997).

19. *Wasatch County v. Okelberry*, 2006 UT App 473, ¶ 18, 153 P.3d 745. The balancing test articulated by the court of appeals applies only to locked gates, but it could arguably apply to other types of interruptions, and we consider its potentially broad application here.

predictability from which this area of the law suffers. Thus, while we reject the court of appeals' interpretive approach, its careful review of our case law and attempt to bring coherence to that case law highlights for us the need for a clear, workable standard. We take this opportunity to articulate such a standard.

¶ 13 In interpreting a statute, our goal is to ascertain the Legislature's intent.[20] We do so by first evaluating "the 'best evidence' of legislative intent, namely, 'the plain language of the statute itself.' "[21] We give the words of a statute their "plain, natural, ordinary, and commonly understood meaning, in the absence of any statutory or well-established technical meaning, unless it is plain from the statute that a different meaning is intended."[22]

¶ 14 The word "continuously" is neither defined in the Dedication Statute nor imbued with technical meaning. Thus, we understand "continuously" to have its plain meaning of "without interruption."[23] A party claiming dedication must therefore establish by clear and convincing evidence that a road has been used *without interruption* as a public thoroughfare for ten years in order for the road to become dedicated to public use.

¶ 15 The lack of clarity in this area of the law stems largely from the fact that we have never set forth a standard for determining what qualifies as a sufficient interruption to restart the running of the required ten-year period under the Dedication Statute. We do so now by setting forth a bright-line rule by which we intend to make application of the Dedication Statute more predictable:

An overt act that is intended by a property owner to interrupt the use of a road as a public thoroughfare, and is reasonably cal-culated to do so, constitutes an interruption sufficient to restart the running of the required ten-year period under the Dedication Statute.

This rule does not change the burden of the party claiming dedication. For a highway to be deemed dedicated to the public, the party claiming dedication must establish by clear and convincing evidence that the road at issue was continuously used as a public thoroughfare for a period of ten years; credible evidence of the type of interruption defined above—an overt act intended to and reasonably calculated to interrupt use of a road as a public thoroughfare—simply precludes a finding of continuous use.

¶ 16 In order to elucidate this standard, we think it helpful to distinguish between an interruption in use and an intermission in use. The distinction lies in the intent and conduct of the property owner. As noted above, a road may be used continuously even if it is not used constantly or frequently.[24] For example, a road may be used by only one person once a month, but if this use is as frequent as the public finds it "convenient or necessary,"[25] and the landowner has taken no action intended and reasonably calculated to interrupt use, the use is continuous. The one-month period of time between usages is a mere intermission, not an interruption. Likewise, a road may be heavily traveled by the public during certain times of the year but impassable because of weather-related conditions at other times. Though the use is not constant, if it occurs as often as the public finds it convenient or necessary, and the landowner has taken no action intended and reasonably calculated to interrupt use, the use is continuous. The period of impassability due to weather is a mere intermission, not an interruption.

20. *See Duke v. Graham*, 2007 UT 31, ¶ 16, 158 P.3d 540.

21. *Id.* (quoting *State v. Martinez*, 2002 UT 80, ¶ 8, 52 P.3d 1276).

22. *State v. Navaro*, 83 Utah 6, 26 P.2d 955, 956 (1933).

23. *Merriam–Webster's Collegiate Dictionary* defines "continuous" as "marked by uninterrupted extension in space, time, or sequence." *Mer-riam–Webster's Collegiate Dictionary* 270 (11th ed.2003).

24. *See Campbell v. Box Elder County*, 962 P.2d 806, 809 (Utah Ct.App.1998).

25. *Boyer v. Clark*, 7 Utah 2d 395, 326 P.2d 107, 109 (1958).

¶ 17 Continuous use may be established as to heavily or lightly used roads, as long as the use is as frequent as the public finds it convenient or necessary. We emphasize here, however, that the action necessary by the landowner to establish an interruption in public use does not vary depending on the level of public use. An overt act intended and reasonably calculated to interrupt public use restarts the statutory period, and the effectiveness of such act is not tied to the level of public use. In other words, an act by a landowner sufficient to interrupt public use of a road used on a daily basis by the public is also sufficient to interrupt public use of a road used on a monthly basis by the public.

¶ 18 We now apply our newly articulated test to the facts of the case at hand. The Okelberrys asserted at trial that there were signs on the roads indicating "No Trespassing," "Keep Out," or "Private," and that trespassers were at times asked to leave. Wasatch County conceded that such signs were posted, but argued that they referred only to property adjoining the roads and not the roads themselves. While the trial court assumed the Okelberrys' assertions to be true for purposes of its analysis, it made no actual findings as to when the signs were posted, what they appeared to reference, or whether trespassers were asked to leave. Thus, while it is clear that the posting of the signs constituted an overt act, it remains a factual question whether the Okelberrys intended the signs to interrupt public use of the roads and whether the posting of the signs was reasonably calculated to do so. Questions also remain as to when the signs were posted and whether trespassers were asked to leave, and if so, when and how many.

¶ 19 The Okelberrys also claimed at trial that the gates were periodically locked for several days at a time beginning in the late 1950s. Here again, while the trial court assumed this claim to be true for purposes of its analysis, it did not make a factual finding on this issue. The locking of gates for several days at a time constitutes an overt act intended to interrupt public use and reasonably calculated to do so. But factual questions remain as to whether and when such an event or events occurred. We therefore re-mand this case for the trial court to make these factual determinations.

## CONCLUSION

¶ 20 Utah Code section 72–5–104(1) provides that "[a] highway is dedicated and abandoned to the use of the public when it has been continuously used as a public thoroughfare for a period of ten years." We hold today that an overt act that is intended by the property owner to interrupt the use of a road as a public thoroughfare, and is reasonably calculated to do so, is an interruption in continuous use sufficient to restart the running of the ten-year period under this statute. If a party produces credible evidence of such an interruption, this evidence will preclude a finding of continuous use. Because the trial court did not make specific findings of fact regarding the Okelberrys' evidence of interruption in the use of the Four Roads as public thoroughfares, we reverse and remand for further proceedings consistent with this opinion.

¶ 21 Chief Justice DURHAM, Associate Chief Justice WILKINS, Justice PARRISH, and Justice NEHRING concur in Justice DURRANT's opinion.